UNITED STATES of America, Appellee,

v.

Darrell Lee McCABE, Appellant.

No. 86–5226.

United States Court of Appeals,
Eighth Circuit.

Submitted Dec. 10, 1986.

Decided March 2, 1987.

Laurence J. Zastrow, Pierre, S.D., for appellant.

Bonnie P. Ulrich, Asst. U.S. Atty., Sioux Falls, S.D., for appellee.

Before WOLLMAN and MAGILL, Circuit Judges, and HANSEN,* District Judge.

MAGILL, Circuit Judge.

McCabe was convicted of kidnapping under 18 U.S.C. § 1201 and sentenced to ten years in prison.[1] For reversal, he argues: (1) that the evidence was insufficient to support the jury's guilty verdict, (2) that the seizure of items from his car violated his Fourth Amendment rights, (3) that impeachment of a witness should have been allowed, and (4) that hearsay statements by the victim's sister were improperly admitted. We affirm the conviction.

## I. BACKGROUND.

This case begins with a disagreement between McCabe and Tim Sandness, the kidnap victim's father, over who owned a Corvette automobile. For three years the two men disputed the ownership of the Corvette, which was stored in Sandness' garage in Woonsocket, South Dakota. On the morning of July 17, 1985, McCabe drove to Sandness' house in Woonsocket

---

* The HONORABLE DAVID R. HANSEN, United States District Judge for the Northern District of Iowa, sitting by designation.

1. The Honorable Donald J. Porter, Chief Judge, United States District Court for the District of South Dakota.

where he met Bo, Sandness' 23–month old son. McCabe placed Bo in his car and drove away. They drove to McCabe's residence in Parker, South Dakota, changed vehicles, then drove to LeMars, Iowa, where McCabe again changed vehicles at a cousin's house. McCabe eventually drove with Bo to a friend's house in White Bear Lake, Minnesota, where they stayed the night. Early in the morning on July 18, Minnesota police arrived at the house, retrieved Bo, and arrested McCabe.

## II. DISCUSSION.

### A. Elements of Kidnapping.

McCabe argues that the elements of "kidnapping" set out in 18 U.S.C. § 1201 were not present in his case.[2] To prove guilt under this statute, four elements must be established: (1) the transportation in interstate commerce (2) of an unconsenting person who is (3) held "for ransom or reward or otherwise," (4) such acts being done knowingly and willfully. *United States v. McBryar*, 553 F.2d 433 (5th Cir.), cert. denied, 434 U.S. 862, 98 S.Ct. 191, 54 L.Ed.2d 136 (1977).

### 1. Consent.

The victim's lack of consent is a fundamental element of kidnapping. As the Supreme Court stated in *Chatwin v. United States*, 326 U.S. 455, 464, 66 S.Ct. 233, 237, 90 L.Ed. 198 (1946), it is "the involuntariness of seizure and detention which is the very essence of the crime of kidnaping." The *Chatwin* Court noted, however, that: "[i]f the victim is of such an age or mental state as to be incapable of having a recognizable will, the confinement then must be against the will of the parents or legal guardian of the victim." *Id.* at 460, 66 S.Ct. at 235. The Court noted in this regard that any incapacity of the victim must be shown by "competent proof beyond a reasonable doubt * * * in relation to the very acts in question" before criminal liability could be imposed. *Id.* at 462, 66 S.Ct. at 236.

McCabe argues that the government failed to prove by substantial evidence either that Bo was unconsenting or that he did not have a recognizable will and was thus unable to consent. He argues that Bo's actions when McCabe arrived at the Sandness home, Bo's demeanor during his time with McCabe, and Mrs. Sandness' testimony that Bo "likes cars" and "likes to go for rides" all combine to show that Bo had an easily recognizable will and consented to his journey with McCabe.[3] We reject this argument. Although there is no precise age at which a "recognizable will" legally exists, the guidelines in this area, combined with common sense, dictate our conclusion that the wishes of Bo's parents, rather than Bo's wishes, are controlling.

In *Chatwin*, 326 U.S. at 461, 66 S.Ct. at 236, the Court pointed out that "the general rule [is] that incapacity is to be presumed only where a child is under the age of 14. 9 Wigmore on Evidence (3rd ed.) § 2514." In a footnote, the Court cited the following cases as illustrating the parameters in this area:

*Commonwealth v. Nickerson*, 87 Mass. 518 (child of 9 held incompetent to assent to forcible transfer of custody); *State v. Farrar*, 41 N.H. 53 (child of 4 held incapable of consenting to forcible seizure and abduction); *Herring v. Boyle*, 1 C.M. & R. 377 (child of 10 could not recover for false imprisonment without proof that he knew of alleged restraint upon him); *In re Lloyd*, 3 Man & Gr. 547 (child between

**2.** 18 U.S.C. § 1201 provides in pertinent part:
(a) Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, * * * when:
(1) the person is willfully transported in interstate or foreign commerce;
\* \* \* \* \* \*
shall be punished by imprisonment for any term of years or for life.

**3.** According to McCabe's testimony:
I looked down at him and I said "Hi, Buster," and he looked up at me and then he started to climb up onto my leg to get into the car and I then decided that if he was feisty and had that much desire to get into the car, I did pick him up underneath his armpits, put him across and into the passenger seat alongside me.

11 and 12 held competent to decide whether to live with father or mother). *Chatwin*, 326 U.S. at 461 n. 4, 66 S.Ct. at 236 n. 4.

The Second Circuit in *United States v. Macklin*, 671 F.2d 60, 64 n. 5 (2d Cir.1982), stated that:

> *Chatwin* merely held that incapacity or lack of a "recognizable will" cannot be presumed, but must be proved beyond a reasonable doubt. *Quite obviously, if the victim is an infant, the absence of a "recognizable will" speaks for itself, and the will or consent of the parent or guardian would control.* (emphasis added).

■ While Bo may have had a "recognizable will" regarding simple matters such as hunger, thirst, comfort, and affectionate attention, he was certainly not competent to know the nature of his journey with McCabe. The will that Bo showed is present in babies from birth. To accept an infant's desires for food and comfort as the type of will contemplated in the context of a kidnapping would render the concept meaningless. We think that for a child to show a will regarding an alleged kidnapping, the child must at least understand the concept of kidnapping and its potential relevance to his or her situation. Bo thus cannot be said to have shown a "recognizable will" as to his trip with McCabe.

Because we find that Bo did not, and could not, consent to his journey, the will of his parents governs. McCabe does not argue that Bo's parents consented to his trip. We therefore hold that the "lack of consent" element is satisfied.

### 2. Intent.

■ McCabe next argues that the evidence failed to show that Bo was taken for an illegal purpose or with illegal intent. We conclude, however, that the jury had sufficient evidence to find that McCabe intended to kidnap Bo when he picked him up, and maintained that intent throughout the trip. The record reflects that McCabe switched cars twice during the trip, gave incorrect information about the identity and location of Bo's parents, and requested a babysitter for Bo for two weeks. We will not disturb the jury's finding as to intent.

### 3. Purpose.

McCabe argues that his alleged motive for the kidnapping, which was to get revenge on Sandness for holding the Corvette, is insufficient to satisfy the "or otherwise" part of the kidnapping statute.

As first enacted in 1932, the statute required that the kidnapping be "for ransom or reward." The amending Act of May 18, 1934, added the words, "or otherwise." The Supreme Court in *Gooch v. United States*, 297 U.S. 124, 128, 56 S.Ct. 395, 397, 80 L.Ed. 522 (1936) (quoting H.R.Rep. No. 1457, 73d Cong., 2d Sess., May 3, 1934), noted that Congress added "or otherwise" for the express purpose of extending the Act to "persons who have been kidnaped and held, not only for reward, but for any other reason * * *." This amendment has been broadly interpreted. "[A]n expansive interpretation has been uniformly adhered to by the federal courts, and it is clear that the statute does not require a motive of pecuniary profit." *United States v. Crosby*, 713 F.2d 1066, 1070–71 (5th Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983). "We think that Congress by the phrase 'or otherwise' intended to include any object of a kidnaping which the perpetrator might consider of sufficient benefit to himself to induce him to undertake it." *United States v. Wolford*, 444 F.2d 876, 881 (D.C.Cir.1971) (quoting *United States v. Parker*, 103 F.2d 857 (3d Cir.), *cert. denied*, 307 U.S. 642, 59 S.Ct. 1044, 83 L.Ed. 1522 (1939)).

■ It was argued to the jury that McCabe took Bo to use as a bargaining chip to get the Corvette back, and because he wanted to "get at" Sandness. The jury accepted these motives, and we see no reason to disturb its finding of revenge. Diverse motives have been held to satisfy the "or otherwise" phrase in the statute. *See, e.g., United States v. Wolford*, 444 F.2d at 880–81 and cases cited therein. In view of the broad construction that both Congress

and the courts have given the "or otherwise" language, we hold that revenge as a motive falls within the statute's scope.

### B.  Other Arguments.

McCabe also argues that the police improperly seized items from his car, that he should have been allowed to impeach a witness, and that hearsay statements by Bo's sister were improperly admitted. We have examined these contentions and find them to be without merit. For the foregoing reasons, the judgment of the district court is affirmed.