**UNITED STATES of America, Appellee,**

v.

**Carlton Bernard BROWN, Appellant.**

No. 89–5346.

United States Court of Appeals, Eighth Circuit.

Submitted Feb. 13, 1990.

Decided May 10, 1990.

Douglas Peine, St. Paul, Minn., for appellant.

Jeffrey S. Paulsen, Minneapolis, Minn., for appellee.

Before LAY, Chief Judge, BEAM, Circuit Judge, HANSON,* District Judge.

LAY, Chief Judge.

Carlton Brown was charged with aiding and abetting the distribution of cocaine, 18 U.S.C. § 2 (1988), and 21 U.S.C. § 841(a)(1), (b)(1)(C) (1988); conspiracy to distribute cocaine, 21 U.S.C. § 841(a)(1), (b)(1)(C) and 21 U.S.C. § 846 (1988); and aiding and abetting the possession of cocaine, 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1), (b)(1)(C). Following a jury trial, Brown was found guilty of the first two charges, and acquitted of the third charge. He was sentenced to concurrent terms of 210 months on each count following an enhancement in his criminal history score under the career offender provision of the guidelines. Brown now appeals his conviction asserting prejudicial error resulting from improper prosecutorial questioning. He likewise appeals his sentence on the basis that the district court improperly applied the career offender provision in sentencing him. We affirm the conviction, however, we vacate the sentence and remand to the district court[1] for resentencing.

---

* The HONORABLE WILLIAM C. HANSON, Senior United States District Judge for the Northern and Southern Districts of Iowa, sitting by designation.

1. The Honorable Paul A. Magnuson, United States District Judge for the District of Minnesota.

Curtis Lemke and Raynal Simmons were arrested on December 20, 1988, when they attempted to sell ten ounces of cocaine to an undercover police officer. Lemke and Simmons agreed to cooperate with law enforcement officials, and named Carlton Brown as the source of the cocaine.[2]

■ Brown did not testify at the trial. His girlfriend, Kelley Gaines, testified that she had not seen Brown selling drugs in the two months she had known him. During cross-examination, the prosecutor asked the following question: "You haven't been able to hang around since December 20 because he has been incarcerated, correct?" (T. 295). Brown's trial counsel immediately approached the bench and requested dismissal of all counts based on the prejudicial impact of the prosecutor's comment informing the jury of Brown's pretrial detention. The district court denied the motion and instructed the jury to disregard the prosecutor's last question.

Brown argues that introducing information about his pretrial detention was highly prejudicial, violating his fundamental right to a presumption of innocence and warranting a new trial.[3] The government points out this was one isolated remark, as opposed to a series of improper statements, and contends that the requisite prejudice is lacking. Gaines never answered the prosecutor's question, and immediately after defense counsel's objection, the district court gave a cautionary instruction to the jury.

The prejudicial impact of an improper question is assessed in the context of the entire trial. *United States v. O'Connell,* 841 F.2d 1408, 1428 (8th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). This court has previously found prejudicial error lacking where the prosecutor's question, though inartful, was never answered, and the weight of the evidence supported the defendant's conviction. *United States v. Andrade,* 788 F.2d 521, 530–31 (8th Cir.), *cert. denied sub nom.,* 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986); *United States v. Clinton,* 711 F.2d 115, 117 (8th Cir.1983). The evidence against Brown was strong. Both Lemke and Simmons testified against Brown, and explained in detail Brown's involvement in this drug transaction. In addition, the jury heard the recorded conversations between Lemke and Brown, which implicated Brown in the distribution of cocaine. Given this evidence, the fact that this was an isolated incident, and the judge's curative instruction, the danger of prejudice was minimal. *See, e.g., Andrade,* 788 F.2d at 531. We therefore affirm the district court's denial of Brown's motion to dismiss or to grant a mistrial.

## APPLICATION OF THE CAREER OFFENDER GUIDELINES

Brown challenges the district court's application of the career offender provision of the guidelines, United States Sentencing Guidelines § 4B1.1.[4] This section requires the sentencing court to add a certain number of points to a defendant's criminal history score for prior convictions involving crimes of violence or controlled substance offenses. Brown has two previous convictions involving controlled substances that

---

**2.** Lemke and Simmons also named Brown as the source of six ounces of cocaine found in Simmons' garage. Brown was acquitted of the third count of the indictment, charging him with aiding and abetting possession of this six ounces of cocaine.

**3.** Although his trial counsel specifically declined to move for a mistrial, requesting instead dismissal of the charges, Brown argues here that the district judge erred in not granting a mistrial. The remedy sought by Brown is irrelevant because we do not find the error to be so prejudicial as to require relief.

**4.** This section provides:
A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. If the offense level for a career criminal from the table below is greater than the offense level otherwise applicable, the offense level from the table below shall apply. A career offender's criminal history category in every case shall be Category VI.
With the enhancement mandated by this section, Brown was subject to a sentence of 210–262 months on each count.

were counted as prior convictions, a 1986 conviction for transportation of a controlled substance, and a 1987 conviction for possession of a controlled substance. Brown argues that his 1986 conviction for transportation of a controlled substance does not qualify as a prior conviction within the meaning of the guidelines.[5]

The commentary to the career offender section defines a "controlled substance offense" as "any federal or state offense that is substantially similar to any of those listed in subsection (2) of the guideline * * *, [including] manufacturing, importing, distributing, dispensing, or possessing with intent to manufacture, import, distribute, or dispense, a controlled substance[,] * * * and other offenses that are substantially equivalent to the offenses listed." U.S.S.G. § 4B1.2, comment. (n. 2) (1988).[6] The 1986 offense arises out of Brown's conviction in California for transportation of 40.9 grams of "rock" cocaine, under California Health & Safety Code section 11352.[7] Brown was sentenced to three years' probation. The district court concluded this conviction was substantially similar to the federal offense found in 21 U.S.C. § 841(a)(1), which provides: "[I]t shall be unlawful for any person knowingly or intentionally—(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance * * *." Brown argues his conviction for transportation of a controlled substance in actually dissimilar to the section 841 offense, because he did not realize the significance of the quantity of cocaine which he possessed at the time he was arrested in California, and the California authorities took a lenient view of the offense, imposing only probation.[8]

■ We begin by comparing the elements of the California offense and the federal offense. *See, e.g., United States v. Cruz*, 882 F.2d 922, 924 (5th Cir.1989) ("[W]e need not decide whether the facts underlying th[e state] conviction would support a conviction [under the federal statute]. We need only decide whether the offense defined under [state law] is 'substantially similar' to the offenses listed as " 'controlled substance offenses' in Guideline § 4B1.2(2)."). The elements of a transportation offense under section 11352 include "knowledge of both the presence of the drug and its narcotic character." *People v. Carter*, 203 Cal.App.3d 373, 249 Cal. Rptr. 812, 813 (1988). "Transportation" has been defined as "to carry," "to convey," and "movement of the contraband from one place to another." *People v. Cortez*, 166 Cal.App.3d 994, 999, 212 Cal.Rptr. 692, 694 (1985). The elements of the federal section 841(a) offense of possession with intent to distribute include possession, either actual or constructive, and intent to distribute, which can be inferred from the quantity and purity of drugs involved.

> [E]very person who transports, imports into this state, sells, furnishes, administers, or gives away, or offers to transport, import into this state, sell, furnish, administer, or give away, or attempts to import into this state or transport any [controlled substance] shall be punished by imprisonment in the state prison for three, four, or five years.
> Cal. Health & Safety Code § 11352 (West 1989).

**5.** Brown also has two previous convictions as a juvenile that were included in calculating his criminal history score under U.S.S.G. § 4A1.2(d)(2)(B), which states: "[A]dd 1 point under 4A1.1(c) for each adult or juvenile sentence imposed within five years of the defendant's commencement of the instant offense * * *." The commencement of the instant offense is during December, 1988. Brown's juvenile sentences were imposed on February 15, 1984 and May 12, 1986. Both juvenile sentences therefore fall within section 4A1.2(d)(2)(B)'s direction.

**6.** This section was amended effective November 1, 1989 to eliminate the "substantially similar" language. *See* U.S.S.G. § 4B1.2(2) (1989). However, since Brown was sentenced June 28, 1989, this case is governed by the pre-amendment version of the definition.

**7.** This statute states:

**8.** Brown's reliance on his probationary sentence to demonstrate that the 1986 conviction was a non-serious offense is defeated by the guidelines, which require counting any prior conviction punishable by more than one year, "regardless of the actual sentence imposed." U.S.S.G. § 4B1.2, comment. (n. 3) (1989) (emphasis added). Thus, even though Brown received only probation, this conviction is included in the criminal history calculation since he could have received up to five years. *See* Cal. Health & Safety Code § 11352.

*United States v. Brett,* 872 F.2d 1365, 1369–70 (8th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 322, 107 L.Ed.2d 312 (1989).

Thus, under either the state or federal statute, a defendant may be convicted if he knowingly has on his person drugs which, judging by their quantity or purity, the defendant did not intend to simply keep for his own use. The elements of the two crimes, therefore, are substantially similar. Although we need not determine that the facts underlying the state conviction would support conviction under the federal statute, *see Cruz,* 882 F.2d at 924, such a determination bolsters our conclusion in this case. During both the state offense and the instant offense, Brown possessed, or abetted the possession of a substantial quantity of a controlled substance with knowledge of its character, that was to be distributed or offered for sale. The district court therefore correctly counted the 1986 state court conviction in calculating Brown's criminal history score.

## DOWNWARD DEPARTURE

■ The district court imposed the harsh sentence dictated by the career offender guidelines with concerned reluctance. It appears the district court felt it was required to impose a sentence that fell within the range specified for a Category Six criminal history score, stating:

> The sentence imposed is at the lower end of the guidelines range because of the extremely harsh penalty required by the career offender guideline. The court is not comfortable with a sentence almost ten times longer than those received by Brown's co-defendants. To be sure, Brown has earned a stiff sentence by virtue of his prior criminal conduct, but the career offender guideline limits the court's discretion to such a great extent that it jeopardizes the court's ability to maintain proportionality between defendants. In this case, the guidelines require the court to send a twenty-year-old man to prison for over seventeen years. The court does not take this responsibi-

9. The district court also noted that Brown's co-defendants, Lemke and Simmons, received sentences of 24 and 27 months. *United States v.*

ty lightly but realizes that Congress and the Sentencing Commission have spoken emphatically on this subject.[9]

*United States v. Brown,* 715 F.Supp. 261, Statement of Reasons for Imposing Sentence 3–4, No. 3–89–002(03) (June 30, 1989). We hold the guidelines are not as restrictive as the district court's statement suggests. In this case, the district court hesitated to depart downward because it did not believe it had the authority to do so. Because we hold the guidelines provide the district court that authority, we remand this case for reconsideration of Brown's sentence.

Ordinarily, departure from the guidelines mandated sentence is allowed only where a specific factor that may warrant departure was not adequately considered in the guidelines. *See* U.S.S.G. § 5K2.0. The district court expressed reluctance at sending a 20 year old defendant to prison for almost 20 years, when his co-defendants received considerably lower sentences. Although age is not a factor that warrants departure, *see, e.g.,* U.S.S.G. § 5H1.1, departure may be appropriate where the guidelines sentence overemphasizes the severity of the conduct or the defendant's criminal history. The guidelines provide:

> "There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. * * * The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category, and *therefore consider a downward departure from the guidelines.* * * * This policy statement recognizes that the criminal history score is unlikely to take into account all the variations in the seriousness of criminal history that may occur. * * * This policy statement authorizes the consideration of a departure from the guidelines in the

*Brown,* Statement of Reasons for Imposing Sentence, No. 3–89–002(03) (June 30, 1989).

limited circumstances where reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's criminal history or likelihood of recidivism, and provides guidance for the consideration of such departures."

U.S.S.G. § 4A1.3 & comment. (emphasis added). Thus, the guidelines clearly allow for the possibility of departure where the defendant's conduct is exaggerated by the criminal history score. *See United States v. Summers*, 893 F.2d 63, 67 (4th Cir.1990) (policy language of section 4A1.3 is a "commission-identified" ground allowing for departure).

The government contends the guidelines prohibit departure in all career offender cases. "A career offender's criminal history category in *every case* shall be Category VI." U.S.S.G. § 4B1.1 (emphasis added). The overall policy provisions of the guidelines make clear that the Sentencing Commission did not intend to so completely restrict sentencing judges in this area. In the Introduction to the Guidelines, the Commission observed:

> In this initial set of guidelines, however, the Commission does not so limit the courts' departure powers. The Commission intends the sentencing courts to treat each guideline as carving out a "heartland," a set of typical cases embodying the conduct that each guideline describes. When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted. * * * With those specific exceptions [listed in the guidelines], however, the Commission does not intend to limit the kinds of factors (whether or not mentioned anywhere else in the guidelines) that could constitute grounds for departure in an unusual case."

U.S.S.G., Ch. 1, Part A, Introduction 4(b). *See also* Testimony Before the Federal Courts Study Committee Concerning the Committee's "Tentative Recommendations" about Guideline Sentencing 8 (Jan. 31, 1990) (statement of the Honorable Stephen Breyer) (guidelines authorize departure in "atypical" case); Breyer, *The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest*, 17 Hofstra L.Rev. 1, 45–50 (1988).

We therefore find this case should be remanded to the district court for consideration by the district court as to whether departure is appropriate. We point out, however, the very limited nature of our holding in this case. We will not reverse a district court where, aware of its authority to do so, it refuses to depart downward. *United States v. Evidente*, 894 F.2d 1000 (8th Cir.), *pet. for cert. filed*, No. 89–7073 (Mar. 23, 1990). A challenge to a district court's failure to depart in such a case is nonreviewable in this court. *Id.* at 1003–05. Where a district court believes it does not have the discretion to consider mitigating factors relevant to a downward departure, however, and that authority does exist, the case can be remanded with instructions allowing, although not directing, the judge to consider whether departure is warranted. *Id.* at 1005; *see also United States v. Maddalena*, 893 F.2d 815, 817–18 (6th Cir.1989). We therefore reverse and remand this case to the district court to consider whether a downward departure, based on Guidelines section 4A1.3, is appropriate.

The judgment of conviction is affirmed; the sentence is vacated and remanded to the district court for resentencing in accordance with this opinion.