**UNITED STATES of America, Appellee,**

v.

**Timothy A. GAYLES, also known as Timothy Moore, also known as Charles Lee Moore, Appellant.**

**No. 92–3104.**

United States Court of Appeals, Eighth Circuit.

Submitted March 17, 1993.

Decided Aug. 25, 1993.

C. Peter Erlinder, St. Paul, MN, argued for appellant.

Joan Ericksen Lancaster, Asst. U.S. Atty., Minneapolis, MN, argued, for appellee.

Before FAGG, Circuit Judge, and LAY and HEANEY, Senior Circuit Judges.

FAGG, Circuit Judge.

Timothy A. Gayles appeals his conviction and sentence for kidnaping Maureen Shook in October 1991. *See* 18 U.S.C. § 1201 (1988). We affirm Gayles's conviction, but remand for resentencing.

This case arises from the abusive relationship between Gayles and Shook. The couple met in 1984 and had two children together. During the course of their relationship, Gayles beat Shook and she obtained restraining orders. After Shook got help at a battered women's shelter for the fourth time, she decided to break off her relationship with Gayles. Shook refused to take Gayles's telephone calls and boarded up her apartment so he could not break in. Nevertheless, Gayles confronted Shook inside a grocery store while she was shopping with her roommate and younger son. Gayles talked with Shook then left the store. When Shook approached her car in the parking lot, however, Gayles ran up to her and grabbed her by her neck and hair. Shook threw her car keys to her roommate, but Gayles retrieved the keys and pushed Shook into her car. Their child was in the back seat. Gayles punched Shook several times, hitting her in the face, back of the head, lips, and nose. One blow knocked Shook's glasses off her face and bent them. Gayles sped out of the parking lot. He told Shook he was going to hit her and put her into the hospital. Gayles also stated he was taking her to Chicago and he was going to kill himself. In an effort to intimidate Shook, Gayles told her a story about a man who had killed his child because he was angry with his wife. Gayles did not stop the car until they crossed the state line into Wisconsin. Gayles then stopped at a gas station and told Shook to clean the blood off her face. He later stopped at a grocery store and, leery of leaving Shook in the car alone, took her inside. Once Shook saw several male employees inside the store, she decided to try to escape. She ran down the aisles screaming for help, with Gayles in hot pursuit. According to store employees, she looked terrified. The employees tried to stop Gayles, but he eluded them and got away in Shook's car.

During the first two days of the trial, the jury heard the testimony of Shook and two government witnesses who saw the initial abduction. Between the second and third days of trial, the judge became ill. Another judge familiarized himself with the proceedings and stated his intent to proceed with the trial under Federal Rule of Criminal Procedure 25. Gayles moved for a one-day continuance to see if the original judge would recover and return. The new judge denied Gayles's motion for a continuance because he was satisfied the original judge would not be able to return within a day. The new judge also denied Gayles's motion for a mistrial. Two days later, testimony ended. A jury found Gayles guilty of kidnaping. Because Gayles was a career offender under the sentencing guidelines, the minimum guidelines sentence was thirty years' imprisonment. The district court imposed the minimum sentence. A few days after sentencing, Gayles and Shook married. Gayles moved for a new trial based on Shook's alleged recantation of her trial testimony. Finding the information contained in Shook's affidavits probably would not result in an acquittal on a new trial, the original judge denied the motion and Gayles's request for a hearing on the motion.

■ Gayles asserts the district court abused its discretion in denying his motion for a new trial, based on Shook's "recantation of her testimony regarding the involuntariness of her association with [Gayles] on the day of the alleged kidnapping." *See United States v. McCabe*, 812 F.2d 1060, 1061 (8th Cir.) (victim's lack of consent is a fundamental element of kidnaping), *cert. denied*, 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987). A motion for a new trial based on recanted testimony should be granted if, among other things, the recantation would probably produce an acquittal on a new trial. *United States v. Provost*, 921 F.2d 163, 164 (8th Cir.1990) (per curiam), *cert. denied*, — U.S. ——, 111 S.Ct. 1603, 113 L.Ed.2d 666 (1991); *Lewis v. Erickson*, 946 F.2d 1361, 1362 (8th Cir.1991).

Gayles mischaracterizes the content of Shook's affidavits. Shook does not state she willingly went with Gayles to Wisconsin and does not contradict her trial testimony about what happened. Instead, Shook states in her first affidavit that she does not believe the events she testified about at trial establish a kidnaping and that she thinks Gayles's sentence is too long. Shook's subjective beliefs about the appropriateness of the charge or sentence, however, are irrelevant. Shook

states in a supplementary affidavit that after she told Gayles she wanted to go back to Minnesota, Gayles agreed to return. By this time, however, Gayles had already taken Shook into Wisconsin without her consent, and thus, the crime was already complete. Shook also states in the supplementary affidavit that Gayles never held her for ransom. Ransom, however, is not a requirement of the kidnaping statute, see 18 U.S.C. § 1201 (1988) (unlawfully seized person must be held "for ransom or reward or otherwise"), and Gayles was not charged with holding Shook for ransom. See McCabe, 812 F.2d at 1062–63 (Congress added "or otherwise" to extend the statute to persons held "for any other reason"). In short, the jury was properly instructed about the charge and nothing in the posttrial submissions casts doubt on the jury's finding that Gayles took Shook against her will from Minnesota to Wisconsin for his own purposes. Thus, the information in Shook's affidavits would probably not produce an acquittal on a new trial.

Even if Shook had said she consented to go to Wisconsin with Gayles, disinterested witnesses testified about Shook's abduction by Gayles from the grocery store in Minnesota, her terror in trying to escape in the Wisconsin store, and her bruised face. Thus, a statement by Shook that she voluntarily went to Wisconsin with Gayles would be inconsistent with the independent evidence in this case.

■ We disagree with Gayles's assertion that the district court abused its discretion in denying him a hearing on his new trial motion. A new trial motion based on recanted testimony can usually be decided without a hearing. United States v. Provost, 969 F.2d 617, 619 (8th Cir.1992), cert. denied, — U.S. ——, 113 S.Ct. 986, 122 L.Ed.2d 139 (1993). The judge who decided Gayles's new trial motion heard Shook testify at trial, and thus, the judge did not abuse his discretion in declining to conduct a hearing. Id. at 619–20.

■ Gayles also contends the district court should have granted his motion for a mistrial because the original judge became ill during the trial and another judge was substituted. If a trial judge becomes sick and is unable to proceed after a criminal jury trial has started, another judge may proceed with and finish the trial if the judge certifies familiarity with the record. Fed.R.Crim.P. 25(a). In our view, the plain language of Rule 25 permits the substitution in this case. See United States v. Sisk, 629 F.2d 1174, 1179 (6th Cir.1980), cert. denied, 449 U.S. 1084, 101 S.Ct. 871, 66 L.Ed.2d 809 (1981). The first trial judge became seriously ill and would not be able to return to the courtroom following a reasonable continuance. The new judge certified his familiarity with the record, and went out of his way to avoid potential problems that might arise because of the substitution. Even if the substitution were erroneous, it would be harmless because Gayles does not assert how the substitution prejudiced him. Gayles appeals no evidentiary decisions, and the original judge, who heard Shook's testimony, ruled on Gayles's motion for a new trial based on Shook's alleged recantation.

■ Next, Gayles asserts his right to be present at all stages of his trial was violated when the jury was selected in his absence from the courtroom during a lunch recess. See Fed.R.Crim.P. 43(a). We disagree. Gayles was present in the courtroom while the potential jurors were questioned. Although Gayles was absent later when his attorney made his strikes over the lunch hour, the cover of the jury voir dire transcript shows Gayles was present in the courtroom when the clerk gave the strikes effect by reading off the list of jurors who had not been stricken. Gayles does not present any affidavit to the contrary. Under controlling precedent, Gayles was sufficiently present at the jury's impaneling to satisfy Rule 43 and the Constitution. United States v. Chrisco, 493 F.2d 232, 236–37 (8th Cir.), cert. denied, 419 U.S. 847, 95 S.Ct. 84, 42 L.Ed.2d 77 (1974).

■ Gayles contends his right to a fair trial was prejudiced when a juror saw him in shackles in an area near the courtroom during jury deliberations and the district court held no hearing to determine the impact. Gayles forfeited this issue by explicitly rejecting the district court's invitation to move

for a mistrial or a hearing. We thus lack discretion to reverse on this ground unless the district court made an obvious mistake that prejudiced Gayles. *United States v. Olano,* — U.S. —, — – —, 113 S.Ct. 1770, 1776–78, 123 L.Ed.2d 508 (1993); Fed. R.Crim.P. 52(b). We do not believe the district court committed an obvious mistake. Further, when a juror's view of a defendant in custody is brief, inadvertent, and outside the courtroom, prejudice to the defendant is slight. *United States v. Fahnbulleh,* 748 F.2d 473, 477 (8th Cir.1984), *cert. denied,* 471 U.S. 1139, 105 S.Ct. 2685, 86 L.Ed.2d 702 (1985). Even if we believed the district court made an obvious mistake that prejudiced Gayles, we would not exercise our remedial discretion to correct the error given Gayles's affirmative decision not to move for a mistrial or hearing in the district court. *See Olano,* — U.S. at — – —, 113 S.Ct. at 1778–79; *United States v. Valencia–Lucena,* 925 F.2d 506, 514 (1st Cir.1991).

■ Challenging his sentence, Gayles asserts the district court abused its discretion in denying his motion for a downward departure from the applicable guidelines range. Specifically, Gayles contends the district court should have departed downward because his criminal history category exaggerates the gravity of his earlier criminal activities. *See* U.S.S.G. § 4A1.3. The district court assigned Gayles the criminal history category for career offenders, *see id.* § 4B1.1, relying on Gayles's 1979 conviction for armed robbery and related crimes committed during the same criminal episode when he was 21 years old, and a recent state drug conviction for which he served less than six months in prison. Most of Gayles's other skirmishes with the law were misdemeanor offenses.

■ Under U.S.S.G. § 4A1.3, the district court may depart downward from an otherwise applicable sentencing range when reliable information shows the defendant's criminal history category significantly over-represents the seriousness of the defendant's past criminal conduct. *United States v. Brown,* 903 F.2d 540, 544–45 (8th Cir.1990).

A district court may depart downward under § 4A1.3 even if the defendant is a career offender under § 4B1.1. *Id.* at 545. In deciding whether a departure under § 4A1.3 is justified, a district court considers the historical facts of the defendant's criminal career. *United States v. Senior,* 935 F.2d 149, 151 (8th Cir.1991); *see United States v. Smith,* 909 F.2d 1164, 1169–70 (8th Cir.1990), *cert. denied,* 498 U.S. 1032, 111 S.Ct. 691, 112 L.Ed.2d 682 (1991); U.S.S.G. § 4A1.3(a)–(e).

At Gayles's sentencing hearing, the district court did not acknowledge its power to depart from the applicable guidelines range under U.S.S.G. § 4A1.3 or address Gayles's argument for departure under this section. The district court's oversight is entirely understandable because Gayles only raised the § 4A1.3 issue obliquely in a written "Position with Respect to Sentencing" filed with the court ten minutes before the sentencing hearing was scheduled to begin. Gayles argued at the sentencing hearing for a departure based on the unusual facts of the case, but did not argue for a departure based on § 4A1.3. Because the district court did not realize Gayles was seeking a departure under § 4A1.3, we believe we should remand this case to give the district court an opportunity to consider whether a downward departure under § 4A1.3 is appropriate. *See Brown,* 903 F.2d at 545.

■ After the parties filed their briefs and addenda, the Government moved to strike part of Gayles's addendum (containing a newspaper interview with Shook about the events underlying the case) and the parts of Gayles's briefs referring to information contained in the interview. When reviewing the denial of a new trial motion, we do not consider affidavits outside the original district court record. *United States v. Menard,* 939 F.2d 599, 600 (8th Cir.1991) (per curiam). Here, the article was published after the district court denied Gayles's new trial motion and thus is not part of the district court record. In addition, Shook did not swear to the information. Accordingly, we grant the Government's motions to strike.

We affirm Gayles's conviction, but vacate his sentence and remand for resentencing.

LAY, Senior Circuit Judge, concurring.

I respectfully concur in the judgment of the majority. I write separately concerning the thirty-year sentence the defendant has received.

This is a state domestic abuse case that a federal prosecutor turned into a federal kidnapping charge because a distraught and abusive husband crossed state lines with his wife and mother of his two children. The evidence shows that after the couple crossed the border from Minnesota to Wisconsin, Gayles's wife persuaded the defendant to voluntarily drive her back to Minnesota.[1]

Gayles now faces thirty years in prison essentially for physically abusing his wife.

His life is ruined, his wife and two children are directly affected by his imprisonment. The total cost to the public to pursue this interminable imprisonment will amount to approximately one million dollars.[2]

Much of Gayles's 30–year sentence is attributable to the trial judge's decision to classify Gayles as a career offender.[3] Without the career offender designation, the Guidelines recommend a sentence of between 100 and 125 months—roughly a 20–year reduction in sentence. The Guidelines define a career offender as a defendant with at least two prior felony convictions involving either a crime of violence or a drug offense.[4] U.S.S.G. § 4B1.1. Gayles concedes he had two such offenses: a 1979 burglary and unlawful restraint conviction for a crime committed when Gayles was 21 years old and a more recent state drug conviction for which he served less than one year in jail.

1. The fundamental issue in a federal kidnapping case is whether the alleged victim consented to being transported across state lines. *United States v. Toledo*, 985 F.2d 1462, 1465–68 (10th Cir.1993), *petition for cert. filed*, (U.S. July 7, 1993) (No. 93–5151); *United States v. Chancey*, 715 F.2d 543, 546 (11th Cir.1983). The Supreme Court made clear in *Chatwin v. United States*, 326 U.S. 455, 66 S.Ct. 233, 90 L.Ed. 198 (1946), that "the very essence of the crime of kidnapping" is "the involuntariness of seizure and detention." *Id.* at 464, 66 S.Ct. at 237. The Court stated:

> The statute was drawn in 1932 against a background of organized violence. Kidnaping by that time had become an epidemic in the United States.... "Law enforcement authorities, lacking coordination, with no uniform system of intercommunication and restricted in authority to activities in their own jurisdiction, found themselves laughed at by criminals bound by no such inhibitions or restrictions ... The procedure was simple—a man would be kidnapped in one State and whisked into another, and still another, his captors knowing full well that the police in the jurisdiction where the crime was committed had no authority as far as the State of confinement and concealment was concerned."
> It was to assist the states in stamping out this growing and sinister menace of kidnaping that the Federal Kidnaping Act was designed. Its proponents recognized that where victims were transported across state lines only the federal government had the power to disregard such barriers in pursuing the captors.

*Chatwin*, 326 U.S. at 462–63, 66 S.Ct. at 236–37 (citations omitted).

2. Gayles's physical abuse of his wife is not to be condoned. According to the Minnesota Sentencing Guidelines, if he were convicted of first degree sexual assault, kidnapping with great bodily harm, or first degree assault (his crime does not necessarily fit these offenses) he would have an offense severity level of VIII. His criminal history score would be 6 or more. On the Minnesota Sentencing Guidelines Grid these numbers would give him a presumptive sentence of between 153 and 163 months. His federal sentence is 360 months.

3. Section 4A1.3 is a policy statement relating to the Adequacy of Criminal History Category. It includes the following statement:

> There may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that the defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period. The court may conclude that the defendant's criminal history was significantly less serious than that of most defendants in the same criminal history category (Category II), and therefore consider a downward departure form the guidelines.

4. The Guidelines also state that the defendant must be at least 18 years of age at the time of the current offense; in addition, the current offense must be a felony conviction for a crime of violence or a drug offense. U.S.S.G. § 4B1.1.

As the majority states, the trial court never considered Gayles's arguments that the career criminal status overrepresents the seriousness of his criminal history.[5] I write separately to emphasize our prior opinions that hold that trial judges may depart downward in career criminal cases because the "guidelines clearly allow for the possibility of departure where the defendant's conduct is exaggerated by the criminal history score." *United States v. Brown*, 903 F.2d 540, 545 (8th Cir.1990).

In *United States v. Senior*, 935 F.2d 149 (8th Cir.1991), we approved a downward departure under section 4A1.3 based on circumstances that are remarkably similar to this case. *See also United States v. Smith*, 909 F.2d 1164, 1169–70 (8th Cir.1990), *cert. denied*, 498 U.S. 1032, 111 S.Ct. 691, 112 L.Ed.2d 682 (1991). In *Senior*, we observed that the then 27–year–old defendant was only 20 years old when he committed his first predicate offenses—a series of robberies. 935 F.2d at 150–51. Here, Gayles was 21 when he committed the burglary that became the first predicate offense in his criminal history designation. Gayles is now 35. In *Senior*, we also relied on the short sentence the defendant received for his second predicate offense—drug charges for which he served about eighteen months of a six-year sentence before being paroled. *Id.* We said this sentence revealed "the state's assess-ment of the seriousness of Senior's crimes as reflected by the state courts' handling of sentencing and by the length of time Senior actually served." *Id.* Gayles's second predicate offense also was a drug offense. He served less than one year in jail on this charge. This too reflects the seriousness with which the State of Minnesota treated this offense. Although Gayles has had many other skirmishes with the law, most were misdemeanor offenses that do not qualify him as a career criminal. U.S.S.G. § 4B1.1; *United States v. Hester*, 917 F.2d 1083, 1084 (8th Cir.1990).

On the basis of the above discussion, I join in the remand to vacate the sentence for the trial court to reconsider defendant's sentence under section 4A1.3 of the Federal Sentencing Guidelines.

---

**5.** Some of the confusion relating to the defendant's objections to the overstatement of his criminal offender status arises because of the withdrawal of defendant's first counsel, James Ostgard, and the appointment of replacement counsel, Peter Erlinder. Before Erlinder entered the case and well before the sentencing hearing, Ostgard objected to the proposed pretrial sentence report submitted by the Probation Office. In that objection counsel specifically addressed the overstatement and use of the career offender status. The probation officer recognized the objection relating to the overstatement of the defendant's criminal history and responded:

> The information contained in this section of the report assists the Court to *evaluate the adequacy of the criminal history category* in reflecting the seriousness of the offender's past criminal behavior and *in determining whether a departure may be warranted.*

(Emphasis added). Gayles's second attorney submitted a position paper 10 minutes before commencement of the sentencing hearing that further addressed the downward departure. The submission argued that the career criminal status "overstates the seriousness of Mr. Gayles' criminal history" because "[b]y any standard, Mr. Gayles' convictions over the past 10 years have not been of the nature that should result in Career Criminal status."

The trial judge, however, treated the arguments on overstatement of criminal history as a challenge to the 30–year sentence under the Eighth Amendment to the U.S. Constitution. The two analyses are quite different. The Eighth Amendment analysis cited by the trial judge looks at the sentence in relation to the crime and permits, as the trial judge correctly observed, only a "narrow review to determine whether the sentence is grossly disproportionate to the crime." Section 4A1.3 of the Guidelines looks only to the defendant's criminal history to determine if the score significantly underrepresents or overrepresents the defendant's record and likelihood of recidivism; it does not involve a weighing of sentence and crime.