# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-1256

_____

United States of America,       \*
       \*
       Appellee,       \*
       \*
       v.       \*   Appeal from the United States
       \*   District Court for the District
Miguel A. Hernandez-Orozco,       \*   of Nebraska.
       \*
       Appellant.       \*

_____

Submitted:  May 11, 1998

Filed:  August 10, 1998

_____

Before McMILLIAN, ROSS, and MORRIS SHEPPARD ARNOLD, Circuit Judges.

_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

After Miguel Hernandez-Orozco and his wife had lived together in Nebraska for some time, Mrs. Hernandez took their four-year-old daughter and moved to a location unknown to Mr. Hernandez.  He began a search for his wife and daughter that included several telephone calls to Mrs. Hernandez's mother in a small village in central Mexico.  During two of these telephone calls, Mr. Hernandez spoke with his wife's younger sister, D.R.G., who was 15 years old at the time.

Approximately five months later, while D.R.G. was walking to school with two friends, two men jumped from a van parked nearby, grabbed D.R.G., and forced her into the van. After a one-day drive, the two men and D.R.G. arrived in another village in Mexico, where they stayed for approximately three weeks. They subsequently drove back to Nebraska in the company of several others, making a stop in Arizona on the way. Mr. Hernandez was eventually indicted under federal law for kidnapping. *See* 18 U.S.C. § 1201(a)(1).

After a five-day trial, a jury convicted Mr. Hernandez, and the trial court sentenced him to 152 months imprisonment. Mr. Hernandez challenges his conviction, arguing that the trial court improperly admitted evidence that Mr. Hernandez had given his wife some forged documents to use in obtaining work. He also disputes the sufficiency of the evidence. Finally, Mr. Hernandez contends that the trial court improperly imposed three sentencing enhancements. We affirm the trial court[1] in all respects.

## I.

As part of its case-in-chief, the government called Mrs. Hernandez to testify and asked how she had obtained work in the United States. Following an objection, Mrs. Hernandez stated that she had used forged documents that Mr. Hernandez had obtained for her. Mr. Hernandez asserts that his wife's testimony about his obtaining those documents for her described a "prior bad act," *see* Fed. R. Evid. 404(b), was irrelevant to the questions before the trial court, *see* Fed. R. Evid. 401, 402, and was in any case substantially more prejudicial than probative, *see* Fed. R. Evid. 403.

Mr. Hernandez conceded, however, both to the trial court and before us at oral argument, that the testimony in question would have been admissible on redirect

---

[1]The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

examination had the defense cross-examined Mrs. Hernandez about the forged documents. Defense counsel, moreover, confirmed twice to the trial court (before Mrs. Hernandez testified about the forged documents but after the government had informed the trial court that it would seek such testimony), that the defense did in fact intend to use the forged documents to impeach Mrs. Hernandez on cross-examination, and defense counsel did indeed cross-examine Mrs. Hernandez about them. Despite his characterization of his objections to this evidence on appeal, therefore, in light of Mr. Hernandez's concession his challenge cannot be to the evidence itself but rather to the timing of its introduction.

"In this circuit the manner and order of interrogation and presentation of evidence are matters committed to the discretion of the [trial] court." *United States v. DeLuna*, 763 F.2d 897, 911 (8th Cir. 1985), *cert. denied*, 474 U.S. 980 (1985). We thus do not believe that the trial court erred in permitting the government to introduce evidence during direct examination about the source of Mrs. Hernandez's forged documents. The defense informed the trial court twice that it would cross-examine Mrs. Hernandez about the forged documents (even after the government revealed how it would defend the attack on Mrs. Hernandez's credibility), and the defense did in fact cross-examine Mrs. Hernandez about those documents. We therefore find no error in the trial court's ruling.

## II.

D.R.G. testified at trial that she was transported involuntarily from Mexico to Nebraska. The testimony of a kidnapping victim that he or she was transported involuntarily is, of course, normally sufficient to support a jury finding that the victim was in fact transported involuntarily. Mr. Hernandez, however, argues that D.R.G.'s testimony was so at odds with her actions, and with ordinary human experience, that no reasonable juror could have credited it and, therefore, that no reasonable juror could have found beyond a reasonable doubt that D.R.G. had been kidnapped. Accordingly, Mr. Hernandez asserts that the trial court erred in denying his motion for acquittal.

One of the common-law elements of kidnapping, of course, is that the victim must be held against his or her will. *See Chatwin v. United States*, 326 U.S. 455, 464 (1946). The federal kidnapping statute under which Mr. Hernandez was convicted similarly requires that the victim not consent to being transported in interstate commerce. *See*, *e.g.*, *Davidson v. United States*, 312 F.2d 163, 166 (8th Cir. 1963); *see also United States v. Gayles*, 1 F.3d 735, 740 n.1 (8th Cir. 1993) (Lay, J., concurring). If the victim consents, then, to a seizure prior to transportation in interstate commerce, the perpetrator cannot be convicted under the federal kidnapping statute. *See United States v. Toledo*, 985 F.2d 1462, 1467 (10th Cir. 1993), *cert. denied*, 510 U.S. 878 (1993). Thus, regardless of any events that took place in Mexico, the kidnapping charge against Mr. Hernandez cannot stand unless a reasonable juror could find beyond a reasonable doubt that D.R.G. did not consent to being transported from Mexico to Nebraska.

The Eleventh Circuit in *United States v. Chancey*, 715 F.2d 543, 545-47 (11th Cir. 1983), a case to which Mr. Hernandez draws our attention, did indeed reverse a kidnapping conviction on the grounds that the alleged victim's uncorroborated testimony so conflicted with her actions that no reasonable fact finder could have credited her testimony. The "victim" in *Chancey* apparently drove the car that transported her across state lines. She voluntarily participated in sexual intercourse with the defendant on several occasions, including the first night that they were together. The alleged victim declined several opportunities to escape, including one occasion on which she was left inside the car, with the keys, while the defendant went into a bar. On another occasion, she drove to a gas station by herself to use the restroom while her alleged kidnapper was on the beach. Finally, when the couple got lost at one point, they asked for directions from a police officer, and the "victim" made no attempt whatsoever to communicate to the officer that she was or had been involuntarily seized.

Mr. Hernandez claims that, like the "victim" in *Chancey*, D.R.G. consented to travel with him from Mexico to Nebraska. In support of his contention, he points specifically to evidence that D.R.G. did not seek assistance at a military checkpoint within Mexico, that she did not ask for help from a Mexican police officer who was alone with her for a time in the second village, that she did not request help when she and Mr. Hernandez stopped at the home of Mr. Hernandez's cousin in Arizona, and that she consented to sexual intercourse with Mr. Hernandez after they arrived in Nebraska.

Unlike the victim in *Chancey*, however, D.R.G. was 15 years old at the time of her kidnapping (she turned 16 years old on the following day), had been raised in rural Mexico, and was apparently unable to communicate in English. She testified that Mr. Hernandez, unlike the defendant in *Chancey*, threatened to harm her brother if she did not cooperate. According to her testimony, moreover, she did inform the police officer in the second village that she had been kidnapped but asked that he not tell Mr. Hernandez of her statement. Finally, D.R.G. consented to sexual intercourse with Mr. Hernandez only after refusing his requests for approximately three weeks and then being taken to a location thousands of miles away from her home, in a foreign country where she did not speak the language.

We note that some evidence at trial, including pictures of Mr. Hernandez and D.R.G. dancing in the second village, tended to show that she might have enjoyed herself at some points during what she testified was her ordeal. But we do not believe that this evidence is so pervasive and so much in conflict with the rest of her testimony as to render incredible her account of the events. We believe, instead, that a reasonable juror could have concluded beyond a reasonable doubt, on the basis of all of the evidence presented at trial, that D.R.G. did not consent to being transported in interstate commerce. We therefore affirm Mr. Hernandez's conviction.

III.

Before a sentencing court may apply an enhancement under the federal sentencing guidelines, it must find, by a preponderance of the evidence, the factual predicate required for the application of that enhancement. We review a sentencing court's factual findings in this respect for clear error. *See*, *e.g.*, *United States v. Hammer*, 3 F.3d 266, 270 (8th Cir. 1993), *cert. denied*, 510 U.S. 1139 (1994).

The trial court applied a three-level enhancement to Mr. Hernandez's offense level for sexually exploiting his victim. *See* U.S.S.G. § 2A4.1(b)(5). Sexual exploitation under this section of the sentencing guidelines is defined to include acts prohibited by certain statutes, including 18 U.S.C. § 2242. *See* U.S.S.G. § 2A4.1, application note 4. This statute prohibits causing another to engage in a sexual act by threatening or placing the victim in fear. *See* 18 U.S.C. § 2242(1).

Despite Mr. Hernandez's argument to the contrary, we do not believe that the trial court clearly erred in finding that his conduct qualified as sexual exploitation under U.S.S.G. § 2A4.1(b)(5). There was evidence that, at the time Mr. Hernandez and D.R.G. had sexual intercourse, she was a 16-year-old girl who had been forcibly detained for at least three weeks, transported to a foreign country where she did not speak the language, and subjected to various threats against herself and her family. Mr. Hernandez argues that D.R.G. knew that she could deny his requests for sexual intercourse because she had successfully done so in the second village. But D.R.G. testified at trial that she consented to sexual intercourse in Nebraska because she "was more afraid" than she had been in Mexico. The trial court could reasonably have believed this testimony and could have concluded that Mr. Hernandez accomplished his desire to have sexual intercourse with D.R.G. by "placing [her] in fear," *see* 18 U.S.C. § 2242(1).

The trial court also imposed a sentencing enhancement on the ground that Mr. Hernandez knew or should have known that D.R.G. was an unusually vulnerable victim due to her age or physical or mental condition. *See* U.S.S.G. § 3A1.1(b). Mr. Hernandez argues that there is no evidence that D.R.G.'s age or physical or mental condition played any part in his decision to kidnap her and contends that her personal characteristics made her no more vulnerable than an ordinary kidnapping victim.

We do not believe that the trial court clearly erred in finding that Mr. Hernandez knew or should have known that D.R.G. was an unusually vulnerable victim for the purposes of this enhancement. There was evidence at trial that D.R.G. was 15 years old on the day when she was kidnapped, that she had never traveled more than a four-hour drive from her small and rural village, that Mr. Hernandez was physically larger and stronger than she was, and that he used his physical advantage in order to kidnap her. There was also evidence that D.R.G. did not speak English, which rendered her more vulnerable in the United States, since she could not as easily seek assistance.

Finally, the trial court imposed a sentencing enhancement on the ground that Mr. Hernandez was a manager in the kidnapping. *See* U.S.S.G. § 3B1.1(c). To determine whether a defendant was a manager for purposes of this enhancement, a sentencing court should consider the defendant's " 'exercise of decision-making authority ... and the degree of control and authority that the defendant exercised over others.' " *United States v. Del Toro-Aguilera*, 138 F.3d 340, 342 (8th Cir. 1998), quoting *United States v. Bryson*, 110 F.3d 575, 584 (8th Cir. 1997). The enhancement is not appropriate, of course, if the defendant is the sole participant in the offense. *See, e.g., United States v. Braun*, 60 F.3d 451, 452 (8th Cir. 1995).

Mr. Hernandez argues that the government failed to prove by a preponderance of the evidence that anyone other than he was criminally responsible for D.R.G.'s kidnapping. But on the contrary, there was evidence at trial that one of Mr. Hernandez's brothers helped Mr. Hernandez to seize D.R.G. in her village, stayed

with her when they crossed the border from Mexico to the United States, and watched her in Nebraska. Mr. Hernandez asserts that there was no evidence that his brother knew that D.R.G. was being forcibly detained. There was evidence at trial, however, indicating that Mr. Hernandez's brother told D.R.G., when she was first abducted, that he and Mr. Hernandez had come to "kill or be killed." D.R.G. testified as well that Mr. Hernandez's brother had a handgun during her abduction.

There was also evidence that others participated in D.R.G.'s kidnapping. D.R.G. testified about a person other than Mr. Hernandez who drove the van in which she was kidnapped and about still another individual who served as a "coyote" to bring her across the border. D.R.G. further testified that another of Mr. Hernandez's brothers accompanied her from the second Mexican village to Nebraska and instructed her on how to act during the trip. According to D.R.G.'s testimony, the second brother's wife watched her when they stopped to use a restroom during the trip to Nebraska. D.R.G. also testified that Mr. Hernandez's father instructed her to write a note expressing her happiness with her situation during the kidnapping. Finally, D.R.G. testified that Mr. Hernandez's sister provided a place for Mr. Hernandez and D.R.G. to stay in Nebraska. It therefore appears to us to be manifest that the trial court did not clearly err in enhancing Mr. Hernandez's sentence because he managed one or more other participants in the criminal activity involved in this case.

## IV.

For the reasons stated, we affirm the judgment of the trial court in all respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

-8-