# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 02-3907/4019

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant/Cross Appellee, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Donald Michael Hutman, | * | |
| | * | |
| Cross Appellant/Appellee. | * | |

_____

Submitted: May 13, 2003

Filed: August 12, 2003

_____

Before BOWMAN, HEANEY, and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

The government contends the district court erred when it determined Donald Hutman's career offender status (and resulting criminal history category VI) overstated the seriousness of his criminal history. In a cross-appeal, Hutman contends his 1992 burglary of a commercial structure should not count as one of the two predicate offenses used to trigger career offender status. We reverse in part and affirm in part.

# I

Between January and May 2001, Hutman and two other individuals made several sales of methamphetamine to a confidential informant and an undercover law enforcement agent. When Hutman was arrested, he was in possesseion of an additional nine grams of methamphetamine. Hutman, along with the other two individuals, was charged in a nine-count indictment with conspiracy to distribute and distribution of methamphetamine. On May 31, 2002, he pleaded guilty to the conspiracy count in exchange for a dismissal of the other four counts.

A presentence report was prepared detailing Hutman's criminal history, which began when Hutman was eighteen. On January 14, 1982, Hutman was convicted of sexual abuse for molesting a five-year-old child after he admitted to fondling the child's penis in an attempt to masturbate him. He spent five months in jail, followed by three years of probation.

During the next two years, Hutman's probation officer filed two petitions to revoke his probation. The first resulted from Hutman being charged with unlawful flight from a law enforcement vehicle (while riding a motorcycle without a taillight, Hutman fled at speeds up to 70 mph when police tried to stop him), a charge for which he was sentenced on August 30, 1982. Probation was reinstated on the sex abuse conviction, and Hutman was sentenced to three more years of probation on the unlawful flight conviction. The second petition to revoke probation was filed on January 10, 1984, after Hutman was charged with theft and trafficking in stolen property. The theft and trafficking charges were dismissed when Hutman's probation on both the sex abuse and unlawful flight convictions was reinstated. He was discharged from probation on both convictions in 1985.

Hutman received his third conviction at the age of twenty-four when he was convicted of the offense of failure to appear and spent one day in jail.

Hutman's fourth criminal conviction occurred when he was thirty years old. In July 1992, Hutman and another person entered a storage area at an apartment complex through a broken window. The two stole five paint containers, two doors, and some plumbing fixtures. On April 7, 1993, Hutman was convicted of burglary in the third degree and sentenced to four years of probation with six months imprisonment deferred until October 1, 1993. He successfully petitioned the sentencing court twice to further defer the jail sentence while he received mental health counseling. In September 1994 the court deleted the six-month jail sentence altogether because of Hutman's progress while on probation, and on July 5, 1995, Hutman was discharged from probation.

Hutman's fifth conviction occurred when he was thirty-six years of age. On June 14, 1999, the Iowa State Patrol stopped Hutman for speeding on Interstate 80. After the arresting officer noticed the smell of marijuana emanating from the car, he performed a routine weapons pat-down search on Hutman and discovered three bundles of cash (totaling $4259) bound with electrical tape in Hutman's front and rear pockets. A subsequent search of the vehicle uncovered 3.5 ounces of methamphetamine in the passenger's purse. When the officer found the drugs, Hutman's passenger screamed, "It's not mine, Donny please tell them where it came from." Additional evidence indicated Hutman was trafficking methamphetamine between Arizona and Iowa: a Fed Ex receipt was found in Hutman's wallet for a package sent between the two states. On October 25, 1999, Hutman received a ten-year suspended sentence for possession of a controlled substance with intent to deliver, followed by five years of probation.

Most of Hutman's convictions occurred too long ago to count in his criminal history, see United States Sentencing Guideline (U.S.S.G.) § 4A1.2(e), so the presentence report assigned him a total of four points (one for the burglary, one for the prior drug offense, and two for committing the instant offense while on probation) placing him in Criminal History Category III. Hutman's prior burglary and drug

convictions count as crimes of violence under the career offender provisions of § 4B1.1, however, and automatically place him in Criminal History Category VI.

At his sentencing hearing, Hutman objected to his status as a career offender. He contended the 1992 conviction for burglary of a commercial structure should not count as one of the two predicate offenses required for career offender status. In the alternative, Hutman argued Criminal History Category VI overstated the seriousness of his criminal history, and moved the district court to depart downward pursuant to U.S.S.G. § 4A1.3.[1] The district court denied Hutman's objection to career offender status, but granted the motion for a downward departure by reducing Hutman's Criminal History Catergory from VI to III, and his offense level from 34 to 30, resulting in a sentencing range of 121-151 months. The government filed a timely appeal of the downward departure, and Hutman filed a timely cross-appeal of the determination that his 1992 burglary offense constituted a predicate offense for career offender purposes.

II

Under the PROTECT Act of 2003, Pub. L. No. 108-21 § 401, 117 Stat. 650, 657 (2003), amending 18 U.S.C. § 3742(e) effective April 30, 2003, we review de novo the issue whether a departure is justified given the particular facts of a case. See United States v. Aguilar-Portillo, 334 F.3d 744, 749-50 (8th Cir. 2003) (applying the

---

[1]U.S.S.G. § 4A1.3 provides in relevant part that

[t]here may be cases where the court concludes that a defendant's criminal history category significantly over-represents the seriousness of a defendant's criminal history or the likelihood that a defendant will commit further crimes. An example might include the case of a defendant with two minor misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period.

PROTECT Act to a pending appeal); United States v. Mejia, 844 F.2d 209, 211 (5th Cir. 1988) ("A change in the standard of review is properly characterized as procedural rather than substantive [and therefore can be applied to a pending appeal without violating the Ex Post Facto clause] because it neither increases the punishment nor changes the elements of the offense or the facts that the government must prove at trial.").

Four prior decisions guide our analysis in determining whether a downward departure is appropriate given the facts of this case. In the first two cases, United States v. Smith, 909 F.2d 1164 (8th Cir. 1990), and United States v. Senior, 935 F.2d 149 (8th Cir. 1991), we upheld decisions to depart downward despite a defendant's status as a career offender. Smith involved a young defendant with a brief criminal career, who committed the two predicate offenses used to trigger career offender status within a two-month period at the age of nineteen. 909 F.2d at 1169.

Similarly, the defendant in Senior was relatively young when he committed the predicate offenses used to trigger career offender status. When he was twenty, he "robbed two Pizza Hut restaurants on the same night, and another Pizza Hut three weeks later." 935 F.2d at 150. The state courts treated the three robberies "'as more or less one criminal episode[,]'" because concurrent sentences were imposed. Id. at 151 (quoting the district court). Senior was paroled after spending three years in prison. Id. When Senior was twenty-four, he sold Dilaudid to an undercover officer, then fourteen days later possessed another controlled substance. A state court again treated the two incidents as one, consolidating them for sentencing and imposing concurrent sentences. Senior was paroled after spending eighteen months in prison. Id. at 150-51.

In the two more recent decisions, United States v. McNeil, 90 F.3d 298 (8th Cir. 1996), and United States v. Butler, 296 F.3d 721 (8th Cir. 2002), we reversed downward departures from the career offender provisions. McNeil had two breaking-

and-entering convictions that triggered career offender status, one of which he committed when he was seventeen. In departing downward, the district court "looked at McNeil's age at the time he committed the prior predicate felonies, some of the circumstances of their occurrences, and how the state courts handled the cases." McNeil, 90 F.3d at 301. While noting those were all "proper factors to consider," we concluded the district court "committed a clear error of judgment in its assessement of the many significant aspects of McNeil's criminal history." Id. We then summarized a criminal history that spanned twenty years, with periods of probation that had "not deterred [McNeil] from the commission of further crime." Id. at 302.

Similarly, in Butler we held a district court abused its discretion in departing downward from career offender status. Butler's criminal history included a number of crimes but just two felonies, a robbery committed in 1988 when Butler was seventeen and a conviction for sexual abuse committed when he was nineteen. 296 F.3d at 723-24. The district court departed downward presumably because of Butler's youth at the time he committed the crimes, and because the robbery was non-violent (Butler robbed a house in the daytime, took precautions to make sure the house was unoccupied, and took only three items). Id. We reversed, recounting the details of the sexual assault and concluding the district court failed to consider adequately the seriousness of that predicate offense, id. at 724-25, or the fact that Butler had a seventeen-year criminal career which "indicate[d] a pattern of serious criminal activity." Id. at 725.

When read together, Smith, Senior, McNeil and Butler indicate a downward departure from career offender status may be appropriate for a relatively young defendant with a brief criminal career, but even in those instances a departure is appropriate only if it "accurately reflect[s] the entire record of the defendant's criminal history." McNeil, 90 F.3d at 301.

Hutman is not a young defendant with a brief criminal history. He broke the law in his teens, twenties, thirties, and now with this offense, his forties. He has six criminal convictions spanning twenty-one years and four decades of his life. Unlike Smith and Senior, Hutman was well into his adult years when he committed the two predicate offense that triggered the career offender guidelines. Like McNeil, prior stints of probation have not deterred Hutman from the commission of further crime. Three times he has had probation revocation petitions filed against him for committing additional crimes while on probation, and the instant drug offense was committed while he was on probation from a prior drug offense. Like Butler, Hutman has a serious conviction for sexual assault. The district court apparently discounted this conviction because Hutman received no criminal history points for it. Our decisions in McNeil and Butler make clear, however, that the seriousness of the defendant's *entire* criminal history must be considered before departing from the guideline's career offender provisions.

In sum, a downward departure in this case would not accurately reflect Mr. Hutman's entire criminal history. Mr. Hutman should be sentenced without departing from the career offender provisions. We therefore reverse and remand for resentencing consistent with this opinion.

III

Reviewing de novo the district court's conclusion that Hutman's 1992 burglary of a commercial structure was a predicate offense for career offender status, United States v. Fountain, 83 F.3d 946, 949 (8th Cir. 1996), we affirm. See United States v. Blahowski, 324 F.3d 592, 595-596 (8th Cir. 2003) (collecting, discussing, and reaffirming prior Eighth Circuit cases which hold the burglary of a commercial

structure counts as a "crime of violence"); see also United States v. Reynolds, 116 F.3d 328, 329 (8th Cir. 1997) ("One panel may not overrule another.").

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.