# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-3281WM

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | On Appeal from the United |
| v. | * | States District Court |
| | * | for the Western District |
| | * | of Missouri. |
| Donald Ray Wallace, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: April 13, 2004

Filed: July 23, 2004

_____

Before LOKEN, Chief Judge, RICHARD S. ARNOLD and FAGG, Circuit Judges.

_____

RICHARD S. ARNOLD, Circuit Judge.

Donald Ray Wallace was convicted on his plea of guilty of violating 21 U.S.C. § 841(a)(1), a drug felony. He admitted that he had knowingly distributed a bag containing 5.61 grams of cocaine base in exchange for $450.00.

At sentencing, the District Court took the view that the defendant's criminal history (Category VI) overstated the seriousness of his situation. Exercising the de novo review that Congress has prescribed, even on questions of fact, we respectfully disagree, and we reverse.

Before his conviction in this case, Mr. Wallace was convicted on three separate charges of felony drug trafficking in Tennessee in 1992. For purposes of sentencing, the three previous convictions qualified defendant as a "career offender" under § 4B1.1 of the Sentencing Guidelines and exposed him to a more severe penalty. Without any departure from the Guidelines, defendant faced a sentencing range of 12 years and 8 months (152 months) to 19 years and 7 months (235 months).

The District Court, however, departed downward. It granted Mr. Wallace a 78-month (6 years and 6 months) departure pursuant to Section 4A1.3(b) of the Guidelines, sentencing him to 9 years and 2 months (110 months). The Court believed that the sentencing range produced by the Guidelines overstated the threat to the community posed by Mr. Wallace. Specifically, the District Court took notice that it had been over ten years since defendant had been convicted of the felonies, that he had finished his parole, and that his three felony convictions, although distinct, were "functionally consolidated" and did not evidence the sort of sustained criminality that Section 4B1.1 intends to punish. The government argues that this departure was error.

Defendant argues that the government's argument was not properly preserved, and that we should use a plain-error review. See United States v. Regan, 952 F.2d 1049, 1049-50 (8th Cir. 1992). We disagree. Fed. R. Crim. P. 51(b) provides that "[a] party may preserve a claim of error by informing the court – when the court ruling or order is made *or sought* – of the action the party wishes the court to take, or the party's objection to the court's action and the grounds for that action." (emphasis added). Before the District Court's order departing downward, the government informed the District Court that it opposed the departure for the reasons it reiterates before our Court. See Sentencing Tr. 38-39. Such an objection satisfies the requirement of Fed. R. Crim. P. 51(b). Therefore, "[u]nder the PROTECT Act of 2003, . . . we [will] review de novo the issue whether a departure is justified given the particular facts of [the] case." United States v. Hutman, 339 F.3d 773, 775 (8th Cir.

2003). (PROTECT stands for Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today.)

In authorizing the departure, the District Court cited United States v. Greger, 339 F.3d 666 (8th Cir. 2003). In Greger, we noted that our Circuit agrees with the majority of the circuit courts of appeals approving, in appropriate cases, "[d]eparture[s] in both criminal history category and offense level for over-representation of criminal history in cases involving career offenders." Id. at 671. We went on to hold that "the district court has the authority to depart downward under § 4A1.3 both horizontally in criminal history category and vertically in offense level from [the defendant's] sentencing guideline range, which was enhanced under § 4B1.1 due to his career offender status." Id. at 672. We do not depart from that holding today. Instead, we acknowledge that Greger controls the kind of departure a district court may order in appropriate cases, but it does not speak to *when* a departure is appropriate. Our later case law has clarified this latter issue.

In Hutman, we held that "a downward departure from career offender status may be appropriate for a relatively young defendant with a brief criminal career." Hutman, 339 F.3d at 776. We later explained that "that the seriousness of the defendant's *entire* criminal history must be considered before departing from the guideline's career offender provisions." Id. at 776-77. We believe, applying this precedent, that the District Court's downward departure was inappropriate. We agree with defendant that Hutman does not make youth a legal requirement for departure, but it certainly does make youth, or the absence thereof, a relevant factor.

Mr. Wallace was thirty-six years old at the time of his conviction in this case. His first criminal conviction was at the age of sixteen, and his criminal behavior has been continuous since then. The District Court, in our respectful opinion, did not give sufficient weight to the fact that Mr. Wallace had been convicted twelve times, albeit on misdemeanor charges, between the instant felony conviction and his last

felony conviction in 1992. His convictions for assault, domestic abuse, receipt of stolen property, trespass, and other crimes, paint a picture suggesting that Mr. Wallace has not been deterred from continued criminal behavior. He is also not a youth. He is an adult and has had many opportunities to get his life on the right track, which he has failed to do.

The District Court took pains to articulate its reasoning, and for that we are grateful. If we were reviewing this sentence for abuse of discretion, the result might be different. On the present record, however, we cannot agree that a downward departure was appropriate. Nor is there any constitutional infirmity in the statute requiring de novo review in certain cases. Congress has the authority to regulate the relationship among different federal courts in a hierarchical system. See The Mayor v. Cooper, 73 U.S. 247, 252 (1867). As part of that authority, Congress can dictate levels of review. See e.g., United States v. Olano, 507 U.S. 725, 734 (1993) (discussing plan of review).

The judgment is reversed, and the case remanded for resentencing within the Guideline range.

_____