# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-2256

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Northern |
| | * | District of Iowa. |
| Paul Peter Swehla, | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: January 12, 2006
Filed: March 31, 2006

_____

Before LOKEN, Chief Judge, MCMILLIAN[1] and MELLOY, Circuit Judges.

_____

MELLOY, Circuit Judge.

Paul Peter Swehla appeals the district court's[2] sentence of 262 months imprisonment for distributing morphine within 1,000 feet of a school. Swehla argues

_____

[1] The Honorable Theodore McMillian died on January 18, 2006. This opinion is being filed by the remaining judges of the panel pursuant to 8th Cir. Rule 47E.

[2] The Honorable Linda R. Reade, United States District Judge for the Northern District of Iowa.

that his sentence is unreasonable because his criminal record was overstated and the presentence report was inflammatory and not objective.  We affirm.

I.

In November 1998, Swehla's father, Gerald Swehla, was diagnosed with colon cancer.  A doctor prescribed large quantities of morphine to allow Swehla's father to cope with the pain associated with his cancer.  Swehla's sister, Paulette Heying, who was a nurse, cared for her father until he died on June 7, 1999.  At that time, Heying stored the remaining morphine in her home.  Over the next two-and-one-half years, Swehla stole more than one hundred 15 mg, 30 mg, and 100 mg morphine pills from Heying's home.

On January 21, 2002, Swehla provided some of the morphine pills to his friend, Ryan Monson.  Because Monson had been drinking heavily with Swehla, the morphine had a dangerous interaction with the alcohol in Monson's system.  Monson died the next morning.  Under the plea agreement, the parties stipulated that the morphine pills were a contributing factor in Monson's death.

After Monson's death, another friend of Swehla, Craig Witt, confronted Swehla about the morphine pills.  Swehla gave a baggie containing over forty pills to Witt along with some loose change.  Witt took the pills and loose change to a nearby creek to dump them.  Witt later told police the location of where he had dumped the pills and loose change.  The police recovered the loose change, but the pills had been washed away by the creek.  Later that day, Fawn Benson, another friend of Swehla, found an additional sixty morphine pills inside Swehla's bandana in Swehla's bedroom.  Benson turned over the sixty pills to police.

After learning that he was wanted for questioning in relation to Monson's death, Swehla made plans to leave the country.  On February 9, 2002, Swehla left the

United States for Mexico.  On October 11, 2002, Swehla was charged in a one-count indictment with distributing morphine in violation of 21 U.S.C. § 841.  A warrant for Swehla's arrest was subsequently issued..

Swehla was captured by authorities on February 11, 2004 when he attempted to reenter the United States in Brownsville, Texas.  On March 3, 2004, Swehla made an initial appearance and pled not guilty.  On November 17, 2004, the government filed a superceding indictment charging Swehla with distributing morphine within 1,000 feet of a school, possession with intent to distribute morphine within 1,000 feet of a school, and distribution of morphine causing the death of Monson.  The government and Swehla entered into a plea agreement.  Swehla agreed to a career offender classification, with a resulting guideline range of 210 to 262 months imprisonment.  It was the understanding of both parties that the district court would sentence Swehla within that range.  The government agreed to dismiss the remaining counts of the indictment.  On December 22, 2004, Swehla entered a guilty plea to distributing morphine within 1,000 feet of a school.

The district court sentenced Swehla on April 29, 2005, after the United States Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005).  In the presentence report, the probation officer concurred with the parties' career offender calculation, including a total adjusted offense level of thirty-two and a criminal history category VI, which yielded a total advisory Guidelines range of 210 to 262 months imprisonment.  The district court sentenced Swehla to 262 months imprisonment, six years of supervised release, and a $100 assessment.  Swehla appeals his sentence.

## II.

Swehla contends that his sentence of 262 months imprisonment was unreasonable in light of the factors set forth in 18 U.S.C. § 3553(a). The government

argues that we should review Swehla's sentence for plain error because Swehla did not properly preserve error on reasonableness by objecting when the sentence was pronounced. Swehla contends that such an objection is unnecessary because a defendant only need argue for a different sentence before the sentence is pronounced. Consequently, Swehla argues that we should review the sentence for reasonableness. See United States v. Marcussen, 403 F.3d 982, 985 (8th Cir. 2005). A review for reasonableness is equivalent to abuse of discretion review. United States v. Hadash, 408 F.3d 1080, 1083 (8th Cir. 2005). We find the government's argument unpersuasive. Once a defendant has argued for a sentence different than the one given by the district court, we see no reason to require the defendant to object to the reasonableness of the sentence after the court has pronounced its sentence. Accordingly, we review Swehla's sentence for reasonableness.

A sentence within the advisory Guidelines range is presumptively reasonable. United States v. Lincoln, 413 F.3d 716, 717 (8th Cir. 2005). Generally, a sentence is presumed reasonable when the district court properly considers the defendant's circumstances, the factors listed in § 3553(a), and the advisory sentencing guidelines range when determining the sentence. United States v. Vasquez, 433 F.3d 666, 670 (8th Cir. 2006). In the present matter, the district court considered the defendant's circumstances, the § 3553(a) factors, and the advisory guidelines range. We do not find any error in the district court's handling of those issues.

Swehla contends that his career offender status overstated his criminal history. Consequently, he contends that his sentence should have been at the bottom of the sentencing range. Specifically, Swehla argues that all of his prior criminal history occurred in the early 1990s when he was a juvenile offender. The crimes that formed the basis for the career offender finding were committed when Swehla was seventeen and eighteen years old. Swehla cites United States v. Hutman, 339 F.3d 773 (8th Cir. 2003), and similar cases to support the contention that we have recognized downward

-4-

departures as appropriate when a criminal history is composed of youthful offenses during a limited period of time.

The present matter is different than those cases cited by Swehla. Swehla committed many crimes from the age of fifteen to eighteen. Even though the crimes that formed the basis for a career criminal offender finding were during a more limited period, Swehla's criminal record is more extensive than just the predicate offenses. Further, Swehla stipulated to his status as a career offender in his plea agreement with the government, with the clear understanding he would be sentenced within that range. We do not find the district court's sentence based upon that stipulation and Swehla's overall record to be in error.

Swehla further contends that the presentence report was unduly inflammatory and not objective. Federal Rule of Criminal Procedure 32(d) sets forth the duties of the presentence reporter. The reporter is not limited to mere fact-gathering, but is required to draw conclusions and make judgments that inform a sentence. Swehla contends that the presentence reporter in this case exceeded these duties. Instead, Swehla contends that the reporter engaged in bias that goes beyond the duties prescribed by the Rules of Criminal Procedure. See United States v. Johnson, 935 F.2d 47, 50 (4th Cir. 1991) (stating that the presentence reporter is an "agent of the court, not an agent of the prosecution").

Specifically, Swehla cites four parts of the presentence report that he claims were not objective. First, Swehla argues that the report included an overly aggressive argument for denying an acceptance of responsibility reduction despite the parties' agreement that the defendant was entitled to that reduction. Both the defendant and the government objected to the report's analysis on this issue.

Second, Swehla contends that the report included an unjustified disparagement of the plea agreement. The report further contended that an upward departure to

negate the benefits to the defendant might be appropriate. Both the defendant and government filed tempering remarks to this part of the report.

Third, Swehla argues that the report contained embarrassing and inflammatory details of crimes Swehla committed at the age of fifteen. Swehla believes that these details were unnecessary for the district court to reach a fair and just sentence in the present matter.

Fourth, Swehla cites the report's dismissal of corrections, clarifications, and explanations to the report. Swehla believes that the presentence reporter should have at least discussed the comments when relevant in the report.

As an agent for the court in the sentencing process, the presentence report writer is neither an advocate for either party nor, necessarily, an advocate for the plea agreement. It was certainly well within the probation officer's responsibility to point out that the flight to Mexico would likely result in an obstruction enhancement under U.S.S.G. § 3C1.1 if the defendant was not a career offender. A person who engages in conduct that results in § 3C1.1 enhancement does not normally qualify for acceptance of responsibility credit. U.S.S.G. § 3E1.1, app. note 3. Likewise, pointing out the possibility of an upward departure because a death resulted is within the statutory responsibility of the probation officer. Federal Rule of Criminal Procedure 32(d)(1)(E). In short, our review of the presentence report does not show a report that is unduly inflammatory but rather very thorough in its discussion of the offense, offender, and applicable sentencing guidelines.

Moreover, as Swehla acknowledges, it is the district court, not the presentence reporter, that ultimately determines the sentence. In this case, the district court neither adopted the recommendation of the reporter for denying acceptance of responsibility credit nor the suggestion that the plea agreement be abrogated. Further, since the government objected to both of these portions of the presentence

report, it is unclear what harm was done by them. In fact, Swehla is unable to cite anything in the record to suggest that the arguably objectionable portions of the presentence report affected the district court's sentencing of Swehla.

As to the contention that the description of Swehla's juvenile crimes was unduly inflammatory, we find no error. A presentence reporter should "provide the trial judge with as much information as possible in order to enable the judge to make an informed decision." United States v. Belgard, 894 F.2d 1092, 1097 (9th Cir. 1990). Having reviewed the presentence report, we find nothing unusual to suggest that the reporter went beyond that role. It is notable that Swehla does not contend that anything contained in the allegedly inflammatory sections of the presentence report is inaccurate.

While the presumptions in favor of a Guidelines sentence and a properly determined sentence are rebuttable, there is nothing in the record that causes us to question the judgment of the district court in this matter. Swehla's sentence was within a range agreed upon by the defendant and the government. The district court properly applied the § 3553(a) factors. Even if the presentence report was prejudicial against Swehla, a conclusion with which we do not agree, there is nothing in the record to indicate that it factored into the district court's sentence. Therefore, we do not find that Swehla's sentence was unreasonable.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____