**UNITED STATES of America,**
Plaintiff,

v.

**Douglas Wayne NIELSEN, Defendant.**

**No. CR03–4078–MWB.**

United States District Court,
N.D. Iowa,
Western Division.

April 13, 2006.

Kevin C. Fletcher, U.S. Attorney's Office, Sioux City, IA, for Plaintiff.

## MEMORANDUM OPINION AND ORDER REGARDING RESENTENCING

BENNETT, Chief Judge.

## TABLE OF CONTENTS

I. INTRODUCTION AND FACTUAL BACKGROUND ..........................874

II. LEGAL ANALYSIS .........................................................875
    A. The Eighth Circuit's Post–Booker Sentencing Approach ..................875
    B. Traditional Departure Law Under § 4A1.3 ..............................877
    C. The Defendant's Motion For A Downward Variance ......................881
        1. The history and characteristics of the defendant......................882
        2. Other relevant § 3553(a) factors....................................884

III. CONCLUSION ...........................................................885

## I. INTRODUCTION AND FACTUAL BACKGROUND

On July 23, 2003, the Grand Jury returned an Indictment against Douglas Wayne Nielsen. Specifically, the Indictment was in seven counts and charged him with: conspiring to distribute and possess with intent to distribute 500 grams of methamphetamine, to distribute and possess with intent to distribute 500 grams of methamphetamine within 100 feet of a park, to manufacture and distribute pure methamphetamine, to manufacture and distribute pure methamphetamine within 1000 feet of a park, to distribute cocaine, to distribute cocaine within 1000 feet of a park, to distribute and possess with intent to distribute marijuana, to distribute and possess with intent to distribute marijuana within 100 feet of a park, and to use a minor to commit one or more violations of the federal drug laws, in violation of 21 U.S.C. §§ 846, 860(a), and 860(a)(1); possession of firearms by a felon, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and, possession of firearms by an unlawful user of controlled substances, in violation of 18 U.S.C. §§ 922(g)(3) and 924(a)(2). On April 8, 2004, an Information was filed against the defendant, charging him with conspiring, in the Western District of Missouri, to manufacture 50 grams of pure methamphetamine, in violation of 21 U.S.C. § 846. On April 8, 2004, the defendant appeared before United States Magistrate Judge Paul A. Zoss and entered a plea of guilty to Counts One through Seven of the Indictment and Count One of the Information. On this same date, Judge Zoss filed a Report and Recommendation in which he recommended that the defendant's guilty plea be accepted. No objections were filed to Judge Zoss's Report and Recommendation, and on April 23, 2004, this court accepted Judge Zoss's Report and Recommendation of April 8, 2004. The defendant proceeded to sentencing on July 30, 2004, after *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), had been decided, but before the United States Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). The Presentence Investigation Report ("PSIR") prepared for the defendant's initial sentencing revealed a brief criminal history. When he was 17 years old, the defendant broke into a garage and took several items. He was arrested on May 16, 1988. Fourteen days later, the defendant was again arrested for breaking into a garage and taking, this time, a sixteen gallon keg of Budweiser beer. The defendant was subsequently convicted of two counts of second-degree burglary as a result of these two incidents. He received concurrent ten-year suspended sentences and was ordered to serve 270 days in a residential treatment facility. When he was 19 years of age, the defendant was again convicted of second-degree burglary.

Apparently, the defendant broke into and stole numerous items from several lakeside cabins at Lost Island Lake. Ten days following his arrest on these charges, the defendant and another friend stole a truck from a nearby farm and absconded from the residential treatment facility at which they were being treated. During the course of their flight, the defendant's companion apparently grabbed a woman's purse and pulled it from her as she was getting off work late at night. Sometime later, the defendant was apprehended by the local police. He was subsequently convicted of second-degree robbery and second-degree theft. He was ordered to serve ten years of incarceration on both the burglary and the robbery charge, to run concurrently with each other. He was also sentenced to five years of incarceration on the theft charge, to be served consecutively to the sentences ordered on the burglary and robbery charges. As a result of these convictions, the defendant's probation in his two previous burglary convictions was also revoked and the ten year sentences were reimposed, all to run concurrently with the sentences ordered in the more recent burglary and robbery convictions.

Based on the defendant's criminal history and in accordance with the provisions found in U.S.S.G. § 4B1.1, the PSIR concluded that the defendant qualified as career offender because he was at least 18 years old when he committed the instant offense, the instant offense involved a controlled substance, and the defendant had at least two prior felony convictions for crimes of violence. Thus, due to the career offender enhancement, the defendant's Guidelines range was increased from 188 to 235 months to 262 to 327 months. However, this court, anticipating the eventual outcome of *Booker*, sentenced Nielsen to the statutory mandatory minimum sentence of 120 months based on a finding that pursuant to *Blakely*, the Guidelines were unconstitutional. Accordingly, the defendant was committed to the custody of the United States Bureau of Prisons to be imprisoned for a term of 120 months on Count One of the Indictment, 60 months on Counts Two through Seven of the Indictment, and 120 months on Count One of the Information. All counts were to be served concurrently. The Government appealed the sentence, and while the appeal was pending, *Booker* was decided. On February 1, 2005, the Eighth Circuit reversed and remanded the case for "further consideration of sentencing issues in light of *United States v. Booker* ...."

A resentencing hearing was held on March 22, 2006. During the resentencing hearing, the main point of contention between the parties was whether a departure or variance from the career offender Guideline was warranted on the specific facts of Nielsen's case. Due to the nature of the issues, this court took the resentencing under advisement. After a thorough consideration of the parties' briefs and arguments presented during the hearing, the court is now ready to determine an appropriate sentence in this case.

## II. LEGAL ANALYSIS

### A. The Eighth Circuit's Post–Booker Sentencing Approach

Since the Supreme Court issued its landmark opinion in *Booker*, the Eighth Circuit has urged district courts to follow a multi-step sentencing approach. *See United States v. Hawk Wing*, 433 F.3d 622, 631 (8th Cir.2006) (citing *United States v. Haack*, 403 F.3d 997, 1002 (8th Cir.2005)). However, the Eighth Circuit's jurisprudence has not been entirely consistent in defining the exact contours of this multi-step approach—namely with respect to the continuing validity of departures in post-

*Booker* federal sentencing proceedings. *Compare United States v. Hadash,* 408 F.3d 1080, 1082 (8th Cir.2005) (identifying a two-step approach), *with Hawk Wing,* 433 F.3d at 631 (identifying a three-step approach). This inconsistency within the circuit was recently illuminated in a concurring opinion authored by Chief Judge Loken. *See Hawk Wing,* 433 F.3d at 632 (Loken, C.J., concurring). In *United States v. Hawk Wing,* the majority opinion identified a three-step sentencing approach:

> First, the sentencing court must "determine the appropriate guidelines sentencing range, since that range does remain an important factor to be considered in the imposition of a sentence." [*Haack,* 403 F.3d] at 1003.... Second, after determining the appropriate sentencing range, the district court must decide if a "traditional departure" is appropriate under Part K or § 4A1.3. *Id.* at 1003. Finally, after the district court determines the Guidelines sentence, it must consider "all other factors in § 3553(a) to determine whether to impose the sentence under the guidelines or a non-guidelines sentence." *Id.*

*Hawk Wing,* 433 F.3d at 631. Chief Judge Loken wrote separately to express his disagreement with the court's analysis of departure issues post-*Booker.* *Id.* at 632 (Loken, C.J., concurring). Chief Judge Loken pointed out that other panels of the Eighth Circuit have interpreted *Booker* as requiring only a two-step sentencing process. *See id.* (Loken, C.J., concurring) (citing *Hadash,* 408 F.3d at 1082). Specifically, Chief Judge Loken posited:

> I agree with our panels that have interpreted *Booker* as requiring a two step process in imposing and reviewing sentences under the new advisory guidelines. "We first ask whether the district

court correctly applied the guidelines in determining a guidelines sentencing range. If the guidelines were correctly applied, we then consider whether the sentence chosen by the district court was reasonable in light of all the § 3553(a) factors." *United States v. Hadash,* 408 F.3d 1080, 1082 (8th Cir. 2005). My concern grows out of dicta in *United States v. Haack* that inserted an intermediate step in this process: after determining the correct sentencing range, "the court should then decide if a traditional departure is appropriate under Part K and/or § 4A.1.3" of the guidelines. 403 F.3d 997, 1003 (8th Cir.), *cert. denied,* —— U.S. ——, 126 S.Ct. 276, 163 L.Ed.2d 246 (2005). In this case, applying that dicta, the court analyzes a number of "traditional departure" issues under pre-*Booker* mandatory guidelines authorities. In my view, this approach unduly complicates our appellate task and may compel a significant number of essentially meaningless remands. In reviewing post-*Booker* sentences outside the guidelines range imposed by a district court that correctly determined that range, I would instead adopt the approach of the Seventh Circuit: "after *Booker* what is at stake is the reasonableness of the sentence, not the correctness of the 'departures' as measured against pre-*Booker* decisions that cabined the discretion of sentencing courts to depart from guidelines that were then mandatory." *United States v. Johnson,* 427 F.3d 423, 426 (7th Cir.2005).

*Hawk Wing,* 433 F.3d at 633 (Loken, C.J., concurring). To this end, Chief Judge Loken indicated he did not mean to imply district courts should ignore the Sentencing Commission's policy statements encompassed in § 4A1.3 and Part 5K of the advisory Guidelines. Rather, he was of the view that "[e]xplaining whether those

reasons are consistent with prior limitations on the court's departure authority under the mandatory guidelines will obviously assist this court in determining on appeal whether the sentence is reasonable . . . ." *Id.* (Loken, C.J., concurring).

The continuing validity of departures is not only disputed within the Eighth Circuit, but among the other circuit courts as well. *Compare United States v. McBride,* 434 F.3d 470, 477 (6th Cir.2006) (stating that consideration of a departure is part of calculating the correct Guidelines range); *United States v. Moreland,* 437 F.3d 424, 432 (4th Cir.2006) (We believe . . . that so-called "traditional departures"—i.e., those made pursuant to specific guideline provisions or case law—remain an important part of sentencing even after *Booker* ), with *United States v. Vaughn,* 433 F.3d 917, 923 (7th Cir.2006) ("[T]he concept of a discretionary departure . . . has been rendered obsolete in the post-*Booker* world." (internal quotation marks omitted)). In an area wrought with imprecision, this court will do its best to follow the guidance from the Eighth Circuit and employ the three-step process set forth in *Haack* and reiterated in *Hawk Wing.* This approach follows the most recent guidance from the Eighth Circuit and is consistent with a majority of the circuit courts who have addressed the issue.

### B. Traditional Departure Law Under § 4A1.3

Section 4B1.1 of the United States Sentencing Guidelines states that the criminal history category for all career offenders is a level VI. Prior to 2003, courts routinely interpreted the language of 4B1.1 to allow for a downward departure if a defendant's career offender status resulted in a significant overrepresentation of the seriousness of the defendant's criminal history based on the principles set forth in § 4A1.3. *See, e.g., United States v. Smith,* 278 F.3d 605, 610–11 (6th Cir.2002) (holding that small quantities of controlled substances in prior offenses may, in certain circumstances, overstate the seriousness of a defendant's prior criminal history and thus warrant a downward departure from the career offender Guideline); *United States v. Perez,* 160 F.3d 87, 89 (1st Cir. 1998) *(en banc)* (holding the fact that both the amounts of drugs involved and the defendant's role in his prior offenses were minimal, in combination with other factors, may justify a downward departure from the career offender Guideline); *United States v. Webb,* 139 F.3d 1390, 1395–96 (11th Cir.1998) (noting that, consistent with every other circuit to have addressed this issue, that a sentencing court may depart downward regardless of a defendant's status as a career offender); *United States v. Collins,* 122 F.3d 1297, 1305–09 (10th Cir.1997) (holding the defendant's age, infirmity, and circumstances surrounding one of two predicate convictions are permissible factors to consider in departing downward from the career offender Guideline); *United States v. Lindia,* 82 F.3d 1154, 1164–65 (1st Cir.1996) (referring to a departure from the "career offender category"); *United States v. Rivers,* 50 F.3d 1126 (2d Cir.1995) (stating that criminal history category, offense level, or both may be reduced in a career offender situation); *United States v. Fletcher,* 15 F.3d 553 (6th Cir.1994) (affirming a § 4A1.3 downward departure from the career offender Guideline); *United States v. Shoupe,* 35 F.3d 835 (3d Cir. 1994) (noting § 4A1.3 is equally applicable to career offender calculations); *United States v. Spencer,* 25 F.3d 1105, 1112 (D.C.Cir.1994) (noting § 4A1.3 authorizes downward departures when criminal history category assigned pursuant to the career offender Guideline significantly overrepresents the seriousness of a defendant's past criminal conduct and the likelihood of

recidivism); *United States v. Clark*, 8 F.3d 839, 846 (D.C.Cir.1993) (stating that the district court properly exercised its discretion in sentencing the defendant within the original Guidelines range that applied before the career offender enhancement); *United States v. Reyes*, 8 F.3d 1379 (9th Cir.1993) (allowing downward departure for a career offender if the sentence is disproportional because of the "minor" nature of the defendant's prior convictions); *United States v. Rogers*, 972 F.2d 489, 494 (2d Cir.1992) ("Contrary to the government's argument, there is nothing unique to career offender status which would strip a sentencing court of its sensible flexibility in considering departures."); *United States v. Adkins*, 937 F.2d 947, 951–52 (4th Cir.1991) (allowing for a downward departure from "career offender status"); *United States v. Senior*, 935 F.2d 149 (8th Cir.1991) (affirming downward departure from the career offender Guidelines range to the range that would have applied without the career offender enhancements); *United States v. Bowser*, 941 F.2d 1019, 1023–24 (10th Cir.1991) ("As a threshold issue, we agree … that the Sentencing Guidelines permit the district court to depart downward from career offender status."); *United States v. Brown*, 903 F.2d 540, 544–45 (8th Cir.1990) (recognizing departure under § 4A1.3 may be appropriate in situations involving defendants to be found to be career offenders under § 4B1.1). Because the career offender Guideline increases both the defendant's offense level and criminal history category, a departure under § 4A.13, at least prior to 2003, could potentially reduce either or both of those scores. *See, e.g., United States v. Greger*, 339 F.3d 666, 671 (8th Cir.2003) (holding that a departure based on the career offender enhancement's overstatement of the defendant's criminal history could reduce both ends of a defendant's sentencing matrix). Before the 2003 amendment to § 4A1.3, only the United States Court of Appeals for the Eleventh Circuit held, in contravention to the holdings of the majority of circuit courts, that " § 4A1.3 departures must proceed on only the horizontal axis and not the vertical axis." *United States v. Smith*, 289 F.3d 696, 711 (11th Cir.2002).

However, in recognition of this disagreement, in 2003, the Commission amended § 4A1.3 and, in accordance with the Eleventh Circuit's view, specifically limited departures for career offenders to one criminal history category. Thus, subsection(b)(3)(A) now provides that a downward departure under § 4A1.3 in the case of a defendant sentenced under § 4B1.1 may not exceed one criminal history category. Thus, after 2003, although departures under § 4A1.3 may still be authorized in career offender cases, the district court's discretion is specifically confined to one criminal history category.

Although it is clear the Guidelines themselves have recognized that the career offender enhancement can often result in a gross overstatement of a defendant's criminal history, the Guidelines provide no guidance as to what facts and circumstances should be considered in determining whether such an unpalatable result has occurred. Thus, this court must examine pre-*Booker* case law in order to ascertain the circumstances which compel a conclusion that a departure is warranted due to the overrepresentation of a defendant's criminal history, particularly with respect to defendants who qualify for the career offender enhancement under § 4B1.1.

Specifically, within this circuit, the United States Court of Appeals for the Eighth Circuit has held that a downward departure under § 4A1.3 may be appropriate in situations involving defendants found to be career offenders under § 4B1.1. *See, e.g., United States v. Wallace*, 377 F.3d 825,

827 (8th Cir.2004); *Greger,* 339 F.3d at 671; *United States v. Hutman,* 339 F.3d 773, 776 (8th Cir.2003); *United States v. Gayles,* 1 F.3d 735, 739 (8th Cir.1993); *United States v. Brown,* 903 F.2d 540, 545 (8th Cir.1990). In particular, four prior decisions of the Eighth Circuit are instructive. In two earlier cases, *United States v. Smith,* 909 F.2d 1164 (8th Cir.1990), and *United States v. Senior,* 935 F.2d 149 (8th Cir.1991), the Eighth Circuit upheld decisions to depart downward despite a defendant's status as a career offender. In *Smith,* the defendant was young with a brief criminal career. *Smith,* 909 F.2d at 1169. Further, he committed the two predicate offenses used to trigger career offender status within a two-month period at the age of nineteen. *Id.* Similarly, the defendant in *Senior* was fairly young when he committed the predicate offenses used to trigger career offender status. *Senior,* 935 F.2d at 150. Essentially, in *Senior,* the defendant "robbed two Pizza Hut restaurants on the same night, and another Pizza Hut three weeks later" when he was twenty years of age. *Id.* Thus, the state courts treated these three related robberies " 'as more or less one criminal episode' " because concurrent sentences were imposed. *Id.* at 151 (quoting the district court). Senior was paroled after spending three years in prison. *Id.* Next, when Senior was twenty-four, he sold Dilaudid to an undercover officer, then fourteen days later possessed another controlled substance. A state court again treated the two incidents as one, consolidating them for sentencing and imposing concurrent sentences. Senior was paroled after spending eighteen months in prison. *Id.* at 150–51.

Contrarily, however, in two more recent decisions, *United States v. McNeil,* 90 F.3d 298 (8th Cir.1996), and *United States v. Butler,* 296 F.3d 721 (8th Cir.2002), the Eighth Circuit reversed downward depar-tures from the career offender provisions. In *McNeil,* the defendant had two breaking-and-entering convictions that triggered career offender status, one of which he committed when he was seventeen. In departing downward, the district court "looked at McNeil's age at the time he committed the prior predicate felonies, some of the circumstances of their occurrences, and how the state courts handled the cases." *McNeil,* 90 F.3d at 301. While noting appropriateness of the factors that were considered by the district court, the Eighth Circuit ultimately concluded the district court "committed a clear error of judgment in its assessment of the many significant aspects of McNeil's criminal history." *Id.* In reversing the downward departure authorized by the district court, "the Eighth Circuit characterized McNeil's history as spanning twenty years, with periods of probation that had not deterred him from the commission of further crime." *Id.* at 302. Similarly, in *Butler,* the Eighth Circuit held a district court abused its discretion in departing downward from career offender status. Butler's criminal history included a number of crimes but only two of those were felony offenses—a robbery committed in 1988 when Butler was seventeen and a conviction for sexual abuse committed when he was nineteen. *Butler,* 296 F.3d at 723–24. The district court departed downward presumably because of Butler's young age at the time he committed the crimes and because the robbery was nonviolent (Butler robbed a house in the daytime, took precautions to make sure the house was unoccupied, and took only three items). *Id.* The Eighth Circuit reversed the district court's decision to depart downward, recounting the details of the sexual assault and concluding the district court failed to consider adequately the seriousness of that predicate offense or the

fact that Butler had a seventeen-year criminal career which "indicate[d] a pattern of serious criminal activity." *Id.* at 725.

■ These four cases, taken together, indicate that a downward departure may be authorized in the case of a defendant who is sentenced under the career offender Guideline, but only under limited circumstances. Specifically, "a downward departure from career offender status may be appropriate for a relatively young defendant with a brief criminal career, but even in those instances a departure is appropriate only if it 'accurately reflect[s] the entire record of the defendant's criminal history.'" *Hutman,* 339 F.3d at 776 (quoting *McNeil,* 90 F.3d at 301). Thus, in accordance with this analysis, in *United States v. Hutman,* a more recent case, the Eighth Circuit reversed the district court's decision to depart from the career offender provisions. Essentially, the Eighth Circuit determined Hutman was "not a young defendant with a brief criminal history." Rather, the Eighth Circuit characterized Hutman's record as follows:

> He broke the law in his teens, twenties, thirties and now with this offense, his forties. He has six criminal convictions spanning twenty-one years and four decades of his life. Unlike Smith and Senior, Hutman was well into his adult years when he committed the two predicate offenses that triggered the career offender guidelines. Like McNeil, prior stints of probation have not deterred Hutman from the commission of further crime. Three times he has had probation revocation petitions filed against him for committing additional crimes while on probation, and the instant drug offense was committed while he was on probation from a prior drug offense. Like Butler, Hutman has a serious conviction for sexual assault.

> The district court apparently discounted this conviction because Hutman received no criminal history points for it. Our decisions in *McNeil* and *Butler* make clear, however, that the seriousness of the defendant's *entire* criminal history must be considered before departing from the guideline's career offender provisions.

*Id.* at 776–77. Similarly, the Eighth Circuit again reversed the district court's decision to depart downward from the career offender Guidelines in *United States v. Wallace,* 377 F.3d 825, 827 (8th Cir.2004). In *Wallace,* although the Eighth Circuit reiterated its holding that district courts may authorize a departure under certain circumstances, the court ultimately determined the departure was not warranted with respect to Wallace. *Id.* The court noted Wallace was thirty-six years old at the time of his current conviction, his first criminal conviction was at the age of sixteen, and his criminal behavior had been continuous. *Id.* The court noted:

> The District Court, in our respectful opinion, did not give sufficient weight to the fact that Mr. Wallace had been convicted twelve times, albeit on misdemeanor charges, between the instant felony conviction and his last felony conviction in 1992. His convictions for assault, domestic abuse, receipt of stolen property, trespass, and other crimes, paint a picture suggesting that Mr. Wallace has not been deterred from continued criminal behavior. He is also not a youth. He is an adult and has had many opportunities to get his life on the right track, which he has failed to do.

*Id.* Accordingly, the Eighth Circuit reversed and remanded. The Eighth Circuit's final word indirectly addressing this issue was pronounced in 2005 in *United States v. Mohr,* 407 F.3d 898, 902 (8th Cir.), *cert. denied,* —— U.S. ——, 126 S.Ct.

670, 163 L.Ed.2d 540 (2005).[1] There, the Eighth Circuit simply affirmed its position that a downward departure is permissible if a defendant's criminal history category under the career offender Guideline overstates his criminal record. *Id.* However, the district court in *Mohr*, although well aware of its authority to depart downward in career offender cases, decided a departure was not warranted because of the defendant's extensive criminal background. *Id.* As such, the district court's decision not to depart was unreviewable on appeal. *Id.* (citing *United States v. Dabney*, 367 F.3d 1040, 1044 (8th Cir. 2004)). In conclusion, the Eighth Circuit, along with every other circuit, has held that district courts have the authority to depart downward under § 4A1.3 in cases involving career offenders sentenced under § 4B1.1. However, such a departure will more than likely be upheld only in exceptional circumstances where the defendant's *entire* criminal history adequately justifies such a departure.

■ Thus, the court must now turn to the question of whether the circumstances of this case, after consideration of the defendant's entire criminal history, justify a departure under U.S.S.G. § 4A1.3 for overrepresentation of the seriousness of the defendant's criminal history. After thoroughly reviewing the defendant's *entire* criminal history, as set forth in detail in the PSIR, this court is left with the conclusion that the instant case is more like *Smith* and *Senior*, rather than *McNeil* and *Butler*. For example, like *Smith* and *Senior*, the defendant is young

with a fairly brief criminal career. *See Smith*, 909 F.2d at 1169; *Senior*, 935 F.2d at 150. His prior convictions arise out of, more or less, two criminal episodes and involved relatively minor offenses. The first episode involved the burglary of two inhabited garages, the second involved the burglary of several cabins and then an attempt to avoid prosecution by absconding. The four predicate offenses used to trigger career offender status occurred within less than two years of each other when the defendant was ages seventeen and nineteen—essentially a youthful juvenile—respectively. Over a decade passed in between his conviction for the four predicate offenses and his conviction in the instant case. The Government's attempt to distinguish the instant case from *Senior* and *Smith* is unpersuasive. The Government alleges in its brief that the defendant has an "extensive criminal history from ages 17 to 36." Based on the information contained in the PSIR, this is a gross mischaracterization of the defendant's criminal history. Consequently, a departure is warranted on the grounds enunciated in *Smith* and *Senior*. Pursuant to § 4A1.3, the departure is limited to one criminal history category. Thus, the defendant's criminal history category is essentially reduced to a Level V, and his new advisory Guidelines range becomes 235 to 293 months.

## C. The Defendant's Motion For A Downward Variance

■ As alluded to previously, under the Eighth Circuit's three-step sentencing ap-

---

1. This issue was briefly addressed in a very recent Eighth Circuit opinion as well. *See United States v. Swehla*, 442 F.3d 1143, 1145–47 (8th Cir.2006). However, the Eighth Circuit did not engage in an in depth discussion of a departure as applied to career offenders. Rather, the court simply noted that Swehla's circumstances were distinguishable from cases in which departures were granted and that as such, a departure was not warranted. *Id.* at 1146–47. In addition, the court pointed out that Swehla had stipulated to his status as a career offender in his plea agreement and was obviously aware he would be sentenced within that range. *Id.*

proach, a sentencing court's analysis does not end with the consideration of traditional departures. Rather, after the district court determines the Guidelines sentence, it must consider whether to impose the sentence under the Guidelines or a non-Guidelines sentence taking into consideration all of the § 3553(a) factors. These include: the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed to advance institutional integrity, provide deterrence, protect the public, and rehabilitate the defendant; and the kinds of sentences available, including the Guidelines range. *See Booker*, 125 S.Ct. at 757; *see also* 18 U.S.C. § 3553(a). Although this court, at Nielsen's original sentencing, accurately predicted the outcome of *Booker*, it was unable to foretell the exact parameters fashioned by the United States Supreme Court—namely that it would be required to consider all of the § 3553(a) factors. Thus, because these factors were not considered at Nielsen's original sentencing hearing, the court must do so now in accordance with the Eighth Circuit's guidance on remand. Accordingly, this court will consider the relevant factors in turn. *See United States v. Moreland*, 437 F.3d 424, 432 (4th Cir.2006) ("The district court need not discuss each factor set forth in § 3553(a) 'in checklist fashion'; 'it is enough to calculate the range accurately and explain why (if the sentence lies outside it) this defendant deserves more or less.' ") (quoting *United States v. Dean*, 414 F.3d 725, 729 (7th Cir.2005) (internal quotation marks omitted)).

### 1. The history and characteristics of the defendant

▉ The court begins with the main factor in contention between the parties—the history and characteristics of this defendant. Specifically, whether the career offender enhancement has resulted in a gross overstatement of the defendant's criminal history. There is little question, that post-*Booker*, a defendant's history and characteristics are appropriate considerations, even in cases involving the career offender enhancement. *See United States v. Feemster*, 435 F.3d 881, 884 (8th Cir. 2006) (rejecting the Government's argument that *any* variance from the career offender Guidelines range would be unreasonable). In *United States v. Feemster*, the Eighth Circuit specifically stated that the history and characteristics of the defendant were appropriate considerations, even in cases involving a career offender. In *Feemster*, the Eighth Circuit noted that such a consideration was particularly appropriate under the facts of that case because the defendant's Guidelines range "more than tripled based on acts committed while a juvenile." *Id*. The facts in *Feemster* are similar to the facts of this case. In *Feemster*, the career offender enhancement was triggered by a first-degree burglary conviction that occurred when the defendant was 17 years old and a first-degree robbery offense the defendant was convicted of seven years later, when he was 24 years old. *Id*. at 882–83. Although ultimately, the Eighth Circuit remanded the case to the district court for resentencing because it appeared the district court failed to consider *all* of the 3553(a) factors, the Eighth Circuit clearly recognized the appropriateness of considering the impact of the defendant's prior convictions, even in the case of a career offender. Thus, within the Eighth Circuit, it appears that a sentencing court may properly consider overrepresentation of a defendant's criminal history by application of the career offender enhancement.

With this in mind, the particular circumstances of this case must be examined. Even after granting the departure, the defendant's criminal history category re-

mains a level V, based solely on the offenses the defendant committed over a decade ago when he was 17 and 19. Like *Feemster,* the defendant's Guidelines range has been substantially increased based on offenses he committed when he was juvenile. This remains true even after application of the traditional § 4A1.3 departure because the defendant's Guidelines range is still substantially increased by these offenses. For example, absent the career offender enhancement, the defendant would have been subject to an advisory Guidelines range of 188 to 235 months. Further, his mandatory minimum—120 months—is substantially below his advisory Guidelines range.

The Government attempts to rely on two cases from the Fourth Circuit for the proposition that granting a variance with respect to career offenders undermines Congressional policy and is inappropriate. *See United States v. Moreland,* 437 F.3d 424, 432 (4th Cir.2006); *United States v. Green,* 436 F.3d 449 (4th Cir.2006). Obviously, these cases are not binding precedent on this court, particularly in light of the inferences that can be gleaned from the Eighth Circuit's opinion in *Feemster.* Further, a careful reading of *United States v. Green* and *United States v. Moreland* reveals that the Fourth Circuit's holdings in those cases are more limited than what the Government's argument suggests. The problem the Fourth Circuit had in both *Green* and *Moreland* was that the district court had expressed disagreement with Congress's decision to base career offender status on certain types of offenses. Specifically, in *Green,* although the defendant qualified as a career offender, the district court decided not to sentence him more harshly because in the district court's view, "the practical demonstration of a career offender [did] not fit [the defendant]." *Green,* 436 F.3d at 457. Thus, in sentencing the defendant, the dis-

trict court reduced his criminal history category from a level VI to a level III. *Id.* Although the sentencing court committed myriad errors in sentencing the defendant—for example, treating two prior convictions as one when the offenses clearly counted as individual offenses under the Guidelines—more relevant to this proceeding was the circuit court's concern with the district court's conclusion that the defendant should not receive a harsher sentence because he was dissimilar to most crack cocaine dealers due to the fact he did not possess firearms or use violence. *Id.* at 458-60. In the Fourth Circuit's view, this conclusion was simply an expression of disagreement with Congress's decision to base career offender status on two prior drug offenses, regardless of the use of violence or firearms. *Id.* at 459. The Fourth Circuit pointed out that Congress made the policy determination that repeat drug dealers should be punished more harshly, regardless of whether violence or guns were involved. *Id.* In the Fourth Circuit's view, "[t]he district court was not free to ignore that policy judgment and substitute one that would require, in addition [to the offense], firearms and violence". *Id.* Thus, a careful reading of *Green* reveals it stands simply for the proposition that district court's are not free to substitute their own policy judgments in place of Congress's by requiring additional facts or the presence of additional requirements before sentencing a defendant as a career offender. This reading of *Green* is bolstered by *Moreland.* In *Moreland,* the district court determined that sentencing the defendant as a career offender would not comport with the goals of § 3553(a) due to the fact that the defendant's prior offenses involved small quantities of drugs and no firearms or violence. *Moreland,* 437 F.3d at 435. However, unlike in *Green,* the district

court attempted to reconcile congressional policy to punish certain types of repeat offenders with the circumstances of Moreland's case. *Id.* at 437. Accordingly, the Fourth Circuit concluded an outright rejection of congressional policy, as was the case in *Green,* did not occur because the district court asserted that the ten-year sentence it meted out to the defendant took into account the fact that the present offense was not his first conviction. *Id.* Therefore, the Fourth Circuit concluded reversal on those grounds was not warranted, as was the case in *Green,* and proceeded to address the extent of the variance. *Id.* It is here, with respect to the extent of the variance, not the fact of, as the Government in this case asserts, that the Fourth Circuit took issue with the district court's sentence. *See id.* at 436–37. The district court determined the facts of Moreland's case warranted two-thirds reduction from the bottom of the advisory Guidelines range and sentenced him to the mandatory minimum sentence of 120 months. *Id.* at 437. The Fourth Circuit noted the extent of the district court's variance was unreasonable under the facts of the case. *Id.* In particular, the circuit court noted that the 120–month sentence did not truly take into account Congress'@s judgment to punish repeat drug offenders more harshly for their actions because 120 months was the same sentence the defendant would have received had he not been a career offender as it was the mandatory statutory minimum sentence authorized for that particular crime. *Id.* at n. 9. Accordingly, the Fourth Circuit vacated the sentence and remanded the case to the district court for resentencing. *Id.*

Therefore, contrary to the Government's assertions, *Green* and *Moreland* do not stand for the proposition that *any* variance violates Congress's decision to punish repeat offenders more harshly. Rather, these cases merely indicate that a variance, in the case of a career offender, must be reasonable, and part of that analysis includes taking into consideration congressional intent to punish certain types of offenders more severely. In sum, *Green* and *Moreland* do not operate to limit judicial discretion to grant a variance, rather, based on the holdings of these two cases, a sentencing court has the authority to grant a variance, but the extent of that variance must be tempered by consideration of congressional intent to punish repeat offenders more harshly. Thus, although this court is not bound by *Green* and *Moreland,* to the extent these cases stand for the proposition that a district court may not reject outright Congress's judgment to punish repeat offenders more harshly, the undersigned agrees with this basic holding, and will attempt to reconcile this defendant's sentence with the principles enunciated in *Green* and *Moreland.*

### 2. Other relevant § 3553(a) factors

■ Myriad other factors weigh in favor of a variance in this case. First, with respect to the nature and characteristics of the offense, the conspiracy Nielsen is charged with occurred over the course of five years—from 1998 to 2003. Thus, although the defendant is charged with a substantial quantity of drugs, this total quantity was derived, in part, due to the length of time the conspiracy was in operation, not because the defendant was a major drug distributor who dispensed with large quantities of drugs at a time. Rather, Nielsen was a small distributor who sold mostly to support his own drug habit. This is a mitigating factor not adequately taken into account by the Sentencing Commission. *See, e.g., United States v. Genao,* 831 F.Supp. 246, 249 (S.D.N.Y.1993) (pre-*Booker* case holding that the defendants' culpability was not accurately reflected be-

cause they were low-level drug dealers that delivered small quantities of drugs over a substantial period of time). Second, the defendant is in relatively poor health for a young individual. He has been diagnosed with hyperlipidemia (high cholesterol) and hypertension (high blood pressure) and takes various medications as a result. Finally, the Guidelines, prior to a variance, called for a term of 235 to 293 months. Based on the defendant's characteristics, this range is much longer than what is necessary to protect the public, provide deterrence and rehabilitate the defendant. After having considered all of the remaining § 3553(a) factors, I determine that a non-Guidelines sentence is appropriate and that a sentence of 188 months is sufficient, but not greater than necessary, to comply with all sentencing purposes, including those purposes identified in *Green* and *Moreland.* Accordingly, the defendant's motion for a downward variance is **granted.**

### III. CONCLUSION

Accordingly, it is the judgment of this court that the defendant be committed to the custody of the United States Bureau of Prisons to be imprisoned for **188 months** on Count One of the Indictment, **188 months** on Count One of the Information, and **92 months** on counts Two through Seven of the Indictment, all to be served concurrently. I have determined this is a reasonable sentence in light of all the § 3553(a) factors and is sufficient but not greater than necessary to protect the public, provide deterrence and rehabilitate the defendant. In addition, such a sentence takes into consideration Congress's intent to punish repeat offenders more harshly, as it is substantially above the 120–month statutory mandatory minimum sentence applicable to both Count One of the Indictment and Count One of the Information. All other terms and conditions of the original sentence are to remain in effect and are reimposed.

**IT IS SO ORDERED.**